# United States Court of Appeals

## FOR THE EIGHTH CIRCUIT

_____

No. 07-2865

_____

St. Paul Fire and Marine   *
Insurance Company,   *
  *
    Plaintiff – Appellant,   *
  *
   v.   *
  *
Compaq Computer Corporation,   *
  *
    Defendant – Appellee.   *


_____

No.  07-2949

_____

St. Paul Fire and Marine   *
Insurance Company,   *
  *
    Plaintiff – Appellee,   *
  *
   v.   *
  *
Compaq Computer Corporation,   *
  *
    Defendant – Appellant.   *

Appeals from the United States
District Court for the
District of Minnesota.

_____

Submitted: May 14, 2008
Filed: August 15, 2008

_____

Before WOLLMAN, MURPHY, and SMITH, Circuit Judges.

_____

MURPHY, Circuit Judge.

St. Paul Fire & Marine Insurance Company brought this declaratory judgment action for a ruling that it had no duty to defend its insured, Compaq Computer Corporation (Compaq), in a case brought against it in Texas by Hal LaPray (LaPray litigation). Compaq counterclaimed for a declaratory judgment that St. Paul had such a duty and for breach of contract damages and then moved for statutory damages under Texas law. The district court[1] ruled in deciding the motions before it that St. Paul had a duty to defend and that Compaq was neither entitled to reimbursement for certain defense costs nor to statutory damages under Texas law. Judgment was entered accordingly, and St. Paul appeals the district court's ruling that it has a duty to defend Compaq in the LaPray litigation. In its cross appeal Compaq attacks the district court's rulings on reimbursement of defense costs and statutory damages. We affirm in part and reverse in part.

I.

Compaq builds and sells computers, and St. Paul is Compaq's liability insurer. On January 28, 2000 Hal LaPray brought a putative class action suit against Compaq in Texas state court alleging breach of contract and breach of express warranty (LaPray litigation). The plaintiffs alleged that they purchased Compaq computers containing defective "floppy diskette controllers" (FDCs) and that the software Compaq issued to "fix" the FDC problem – the SoftPaq – did not work and caused additional damage. Another putative class action was filed on October 31, 1999 in the Eastern District of Texas by Charles Thurmond (Thurmond litigation). In addition to

_____

[1]The Honorable David S. Doty, United States District Judge for the District of Minnesota.

-2-

state law claims, the complaint in that case alleged a federal claim under the Computer Fraud and Abuse Act, 18 U.S.C. § 1030. Yet another similar lawsuit was filed in the District of Colorado (Sprung litigation).

Compaq was covered at all relevant times by a "Multicover Package Policy" issued by St. Paul which included three separate insurance policies: a "Technology Errors and Omissions Liability Protection" policy (Technology E&O policy), a "Technology Commercial General Liability Protection" policy, and a "Technology Umbrella Excess Liability Protection" policy. This lawsuit involves provisions of the Technology E&O policy.

The Technology E&O policy states "[w]e'll pay amounts any protected person is legally required to pay as damages for covered loss that . . . is caused by an error." The agreement defines "error" as an "error, omission or negligent act." The policy defines "damages" as "compensatory damages imposed by law [or] consequential damages," but it expressly excludes "the contract price of [the] computer." The policy also excludes damages that "result[] from any criminal, dishonest, fraudulent or other intentionally wrongful act or omission." The insurer's duty to defend under this policy is therefore triggered when a party sues Compaq alleging an error and demanding damages, as both terms are defined by the Technology E&O policy, so long as the damages are not the result of an intentionally wrongful act.

Compaq submitted the Thurmond litigation to St. Paul in late 1999. St. Paul agreed to defend Compaq pursuant to the Technology E&O policy, but reserved its right to deny coverage upon a subsequent determination that the Thurmond claim was not covered by that policy. After the plaintiffs in Thurmond filed their second amended complaint dropping the state law claims and alleging only the fraud claim, a claim excluded under the policy as a form of intentionally wrongful conduct, St. Paul concluded that it had no duty to defend the lawsuit. It reached the same conclusion after reviewing an amended complaint in the Sprung litigation. Compaq

ultimately prevailed in the Thurmond litigation, which was dismissed on jurisdictional grounds. See Thurmond v. Compaq Computer Corp., 171 F. Supp. 2d 667 (E.D. Tex. 2001). The court is not aware of the status of the Sprung litigation.

In response to St. Paul's declination of coverage for the Thurmond defense costs, Compaq filed suit in Minnesota state court seeking a declaration that St. Paul had a duty to defend the Thurmond and Sprung litigations under the Technology E&O policy. The trial court granted summary judgment for St. Paul because the complaints in those actions alleged "only causes of action and damages resulting from Compaq's intentional conduct," thus not alleging an "error" under the Technology E&O policy. The Minnesota Court of Appeals affirmed. Compaq Computer Corp. v. St. Paul Fire and Marine Ins. Co., 2003 WL 22039551 (Minn. Ct. App. Sept. 2, 2003) (unpublished).

St. Paul then brought this action in Minnesota state court seeking a declaration that it had no duty to defend Compaq in the LaPray litigation under the Technology E&O policy.[2] Compaq removed the case to federal court and then filed two counterclaims: one seeking a declaration that St. Paul had a duty to defend and that Compaq had no obligation to return defense costs related to the LaPray action and the other seeking damages for breach of contract pursuant to the insurance policy package. St. Paul moved for summary judgment on its complaint and Compaq's counterclaim; Compaq filed a cross motion for summary judgment in its favor on St. Paul's complaint and for partial summary judgment on its counterclaim.

The principal decision under review was issued on October 13, 2004. The key issues in determining if St. Paul had a duty to defend Compaq in the LaPray litigation was 1) whether the LaPray complaint alleged an "error" and demanded "damages" as

_____

[2]Compaq had submitted the LaPray litigation to St. Paul for coverage on February 8, 2000. St. Paul accepted coverage under the Technology E&O policy subject to a reservation of rights.

the Technology E&O policy defined those terms and 2) whether a policy exclusion applied. Applying Texas law the district court concluded that the complaint alleged conduct falling within the policy's definition of "error," that the relief sought fell within the definition of "damages," and that no exclusions applied. The district court therefore held that St. Paul had a duty to defend Compaq in the LaPray litigation. St. Paul Fire and Marine Ins. Co. v. Compaq Computer Corp., CIV 03-5471, Doc. 64 (D. Minn. Oct. 13, 2004).

On appeal, St. Paul argues that the district court erred in three ways. It contends that the LaPray complaint does not allege an "error" within the meaning of the Technology E&O agreement, that the LaPray complaint does not seek damages covered by the policy, and that the LaPray complaint triggers the exclusion for losses resulting from intentional wrongful conduct. Compaq supports the district court's determination that St. Paul has a duty to defend the LaPray litigation but claims that the district court erred in ruling on its counterclaims. We address the background and procedural history of those rulings below.

## II.

We review a district court's grant of summary judgment de novo, viewing the evidence in the light most favorable to the nonmoving party. Skare v. Extendicare Health Servs., Inc., 515 F.3d 836, 840 (8th Cir. 2008). We review the district court's findings of fact for clear error and its conclusions of law de novo. Crossett Paper Mills Employees Fed. Credit Union v. Cumis Ins. Soc'y, Inc., 476 F.3d 578, 580 (8th Cir. 2007).

## A.

The principal issue on appeal is whether St. Paul has a duty to defend Compaq in the underlying LaPray litigation pursuant to the Technology E&O policy. The question of whether an insurer has a duty to defend is a legal question that we review de novo. Travelers Property Cas. Co. of America v. Gen. Cas. Ins. Cos., 465 F.3d 900, 903 (8th Cir. 2006).

We agree with the parties that Texas law governs the duty to defend analysis. Under Texas law an insurer has a duty to defend if "any claim alleged in the pleadings is within the coverage of the policy." Dresser Indus., Inc. v. Underwriters At Lloyd's, London, 106 S.W.3d 767, 774 (Tex. App. 2003). Texas applies the "eight corners" or "complaint allegation" rule when determining an insurer's duty to defend. GuideOne Elite Ins. Co. v. Fielder Road Baptist Church, 197 S.W.3d 305, 308 (Tex. 2006). This rule provides that a court must consider only the factual allegations within the four corners of the third party plaintiffs' complaint, together with the terms within the four corners of the insurance policy. Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. Merchs. Fast Motor Lines, Inc., 939 S.W.2d 139, 141 (Tex. 1997) (per curiam). The court "may indulge the most liberal interpretation of the allegations of which they are susceptible and doubts as to the import of the allegations are to be resolved in favor of the insured and coverage." Continental Sav. Ass'n. v. U. S. Fidelity and Guar. Co., 762 F.2d 1239, 1243–44, amended on rehearing in part by 768 F.2d 89 (5th Cir. 1985) (applying Texas law).

When applying the eight corners rule we must determine whether the complaint, properly construed, alleges conduct covered by the policy. GuideOne Elite, 197 S.W.3d at 308. We begin with the terms of the policy itself. The Technology E&O policy "provides errors and omissions liability protection for your computer or electronic products or services." It is a "claims made" policy which covers defense expenses. To be covered, a "claim or suit must be first made or brought while this

-6-

agreement is in effect, or during a reporting period, if one applies."  Under the heading "What This Agreement Covers" the policy states:

> **Technology errors and omissions policy.**  We'll pay amounts any protected person is legally required to pay as damages for covered loss that:
>
> - results from your computer or electronic products or services; and
> - is caused by an error committed on or after the retroactive date and before the ending date of this agreement.

Thus to invoke the policy's coverage, the underlying complaint must allege a loss caused by an "error" for which the plaintiffs request "damages."  The policy expressly excludes coverage for "loss that results from any criminal, dishonest, fraudulent or other intentionally wrongful act or omission."

1.

St. Paul argues that the LaPray complaint alleges intentionally wrongful conduct that falls outside the policy's definition of an "error."  For the reasons discussed below, we disagree.

The policy defines "error" as "any error, omission, or negligent act."  Because the policy uses the term "error" to define itself, we look to common usage.  An error is "[a]n act, assertion, or belief that unintentionally deviates from what is correct, right, or true;" it is a "mistake."   The American Heritage Dictionary 606 (4th ed. 2000) (first and fourth definitions).[3]  In short, an error is an unintentionally incorrect

---

[3]Other dictionaries offer substantially similar definitions of "error." See New Oxford American Dictionary 573 (2d ed. 2005) ("a mistake") (first definition); Black's Law Dictionary 582 (8th ed. 2004) ("[a]n assertion or belief that does not conform to objective reality; a belief that what is false is true or that what is true is false;

act, assertion, or belief, or a mistake. Thus, "error" under the Technology E&O policy "encompasses intentional, non-negligent acts like those associated with the breach of a contract," as well as omissions and negligent acts. See Continental Cas. Co. v. Cole, 809 F.2d 891, 896 (D.C. Cir. 1987). It does not, however, include intentionally wrongful conduct.

In deciding whether the LaPray plaintiffs alleged an "error" we look to the most recent amended pleading – the fourth amended complaint. Compaq disagrees with this approach, arguing that each version of the complaint is relevant when determining whether the insurer has a duty to defend for the time period for which that version of the complaint was in effect. For this proposition it cites Bernard v. Gulf Ins. Co., 542 S.W.2d 429, 431 (Tex. Civ. App. 1976), which recognized that a judgment on an insurer's duty to defend would be res judicata only as to the pleading that existed at the time the judgment was entered, not as to any later amended pleading. Texas law is clear, however, that a court looks only to the latest amended pleading when evaluating an insurer's duty to defend. See Tex. R. Civ. P. 65 ("Unless the substituted instrument shall be set aside on exceptions, the instrument for which it is substituted shall no longer be regarded as a part of the pleading in the record of the cause."); see St. Paul Ins. Co. v. Texas Dep't of Transp., 999 S.W.2d 881, 883 n.2 (Tex. App. 1999) ("The court evaluates an insurer's duty to defend by reviewing only the latest amended pleading."); Rhodes v. Chicago Ins. Co., 719 F.2d 116, 119 (5th Cir. 1983) (under Texas law "the duty to defend is determined by examining the latest, and only the latest, amended pleadings."). We therefore decline to extend the Bernard rule beyond the res judicata analysis for which it was originally intended and conclude that only the fourth amended complaint is relevant for the purpose of our duty to defend analysis.

---

mistake."); Webster's Third New International Dictionary Unabridged 772 (1993) ("an act involving an unintentional deviation from truth or accuracy" or "a mistake in perception, reasoning, recollection, or expression.") (second definition).

In that complaint the plaintiffs allege that each owns a Compaq computer with a defective FDC, that the defective FDCs were expressly warranted by Compaq, and that their claims under that express warranty were denied. See Comp. ¶¶ 14–18. They also allege that once the problem of the defective FDCs was brought to Compaq's attention by the filing of a lawsuit, the company issued a software "fix," the SoftPaq, to correct the FDC defect. Plaintiffs allege, however, that the SoftPaq is not an adequate or timely repair, that it causes corruption of data, and that it does not fix the defective FDCs. Comp. ¶ 20(A)–(C). The complaint further states that Compaq "has repudiated any obligation" to repair or replace the defective FDCs and that Compaq is obligated to refund the full purchase price under the express warranty. Comp. ¶ 20(C). Finally, the complaint states that Compaq has communicated "false and misleading information" about the FDC defect and the SoftPaq and that this "misrepresentation perpetuates and compounds Compaq's knowing breach of express warranty." Comp. ¶ 20(D).

Nowhere in these factual allegations does the complaint allege that Compaq engaged in intentionally wrongful conduct. There are no allegations that Compaq acted "knowingly" or "intentionally." The complaint does not allege that Compaq knew, or even that it should have known, that it was selling computers with defective FDCs. There is no allegation that Compaq provided the SoftPaq knowing that it was defective. While the allegations do claim wrongful conduct, there is no allegation that the conduct was intentionally wrongful. Rather, the allegations support the inference that Compaq unintentionally sold defective computers and unintentionally provided a defective product to fix the original defect. They thus fall squarely within the policy's definition of "error" – an unintentionally incorrect act.[4]

---

[4]Unlike the allegations in the LaPray case, the Thurmond complaint was "replete with allegations of 'intentional' and 'knowing' conduct." Compaq Computer Corp., 2003 WL 22039551, at *5. The plaintiffs there alleged liability under the Computer Fraud and Abuse Act and consequently had to plead intentional wrongfulness as an element of fraud.

St. Paul argues that the phrase "knowing breach" in paragraph 20(D) is an allegation of intentionally wrongful conduct. That paragraph reads: "Compaq has compounded the wrongful acts and damage to the class by communicating to some of the Plaintiffs and other members of the class false and misleading information about the FDC Defect and SoftPaq. This misrepresentation perpetuates and compounds Compaq's knowing breach of express warranty." Emphasis added. Although this sentence references a "knowing breach," it does not itself allege conduct establishing that Compaq knowingly or intentionally breached a contract or express warranty and, as discussed above, nowhere else does the complaint allege an intentional or "knowing" breach to which that sentence could be referring. We thus conclude that this use of the phrase "knowing breach" is a conclusory remark unsupported by any factual allegations. Under Texas law, courts focus only on factual allegations and disregard conclusory statements. See Nat'l Union Fire Ins. Co., 939 S.W.2d at 142 ("Although the pleadings allege that [defendant] negligently discharged the firearm, we must focus our review on the pleading's factual allegations, not on legal theories asserted.").

St. Paul also contends that another use of the phrase "knowing breach" alleges intentionally wrongful conduct. Under the heading "Second Cause of Action (Breach of Contract and Express Warranty)," the complaint states that "[s]upplying defective FDCs . . . is a breach of contract and a breach of Compaq's express warranty against defects in materials and workmanship." Comp. ¶ 34. In a later paragraph under that heading the complaint states "Defendant's acts and omissions are a knowing breach of Defendant's express warranty and breach of contract and a producing cause of economic damages." Comp. ¶ 36(B) (emphasis added). St. Paul argues that reading these phrases together is an allegation that "Compaq distributed defective computers with knowledge of their defect." This reading misconstrues the complaint.

Paragraph 34 is a summary of the factual allegations stating the fundamental factual assertion underlying the breach of contract and breach of express warranty

-10-

claim – that supplying defective FDCs and the SoftPaq was a breach of contract and a breach of express warranty. This conclusion is supported by the factual allegations laid out earlier in the complaint. Paragraph 35 transitions from factual statements to requested remedies, namely specific performance. Paragraph 36 – the paragraph containing the "knowing breach" phrase – demands damages. Like the use of this phrase in paragraph 20(D), the statement that Compaq committed a "knowing breach," on which St. Paul places decisive weight, is a conclusory statement that is unsupported by the factual allegations in the complaint, all of which are intent neutral. To read paragraph 34 in concert with paragraph 36(B) as if it were a single factual allegation misconstrues the complaint.

Because there is no allegation that Compaq sold computers knowing of the FDC defect, we conclude that the sale of computers with defective FDCs is an error as defined by the Technology E&O policy.

2.

The parties also dispute whether the LaPray complaint alleges damages covered by the Technology E&O policy. The policy defines "damages" as "compensatory damages imposed by law," "consequential damages incurred by the protected person under a contract or agreement," and "prejudgment interest awarded against the protected person on a judgment in connection with those compensatory or consequential damages." Expressly excluded from the "damages" definition is "the contract price of [the] computer or electronic products or services."

The complaint seeks as damages a "full refund under [Compaq's] express warranty based on failure and refusal or inability to repair or replace," "the difference in value of the computer when purchased with and without the defect," and "damages for breach of the obligation to repair or replace." Comp. ¶ 36(B). The complaint

disclaims "any consequential damages as the result of the actual loss or corruption of data."  Comp. ¶ 19.

The first damage request seeks "a full refund under [Compaq's] express warranty."  This request does not seek covered damages because the policy expressly excludes from the definition of "damages" the contract price of the computer; a refund is necessarily based on the contract price.  This particular request consequently does not request damages under the Technology E&O policy.

St. Paul contends that the complaint does not request "compensatory damages imposed by law" because "damages imposed by law" includes only tort damages, not damages for breach of contract or express warranty.  For this proposition St. Paul relies on dicta from Gulf Portland Cement Co. v. Globe Indem. Co.,  149 F.2d 196, 198 (5th Cir. 1945) ("What, other than Insured's negligence, could render Insured liable for damages imposed by law for personal injuries?").  We find this dicta unpersuasive.  St. Paul's cited case sounded in tort, not in contract, and the insurance policy there covered liability imposed by law for personal injuries and other torts.

The Technology E&O policy does not cover tort liabilities, but rather other damages caused by an "error."[5]  As discussed above, "error" under this policy includes intentional, non-negligent and negligent acts like those associated with a breach of contract or express warranty.  "Damages imposed by law" under the Technology E&O policy thus includes damages for breach of contract and breach of warranty.

The plaintiffs also ask for the difference in value between a computer with and without the FDC defect.  St. Paul argues that this is nothing more than a request for a partial refund, but the complaint is not so limited.  Value is not necessarily tied to

---

[5]A separate policy bundled under the Multicover Package Policy, the Technology Commercial General Liability Protection policy, covers tort liabilities.

-12-

the contract price. Texas courts have recognized that breach of warranty damages are measured by the difference in value of the warranted good or services with and without the defect, not the difference in price. See Tex. Bus. & Commerce Code § 2.714(b) ("The measure of damages for breach of warranty is the difference at the time and place of acceptance between the value of the goods accepted and the value they would have had if they had been as warranted."); Melody Home Mfg. Co. v. Morrison, 502 S.W.2d 196, 202–03 (Tex. Civ. App. 1973). While the contract price is evidence of the value of an item, it is not conclusive. JHC Ventures, L.P. v. Fast Trucking, Inc., 94 S.W.3d 762, 767 (Tex. App. 2002), abrogated on other grounds by Medical City Dallas, Ltd. v. Carlisle Corp., 251 S.W.3d 55, 62 (Tex. 2008). The plaintiffs' request for the difference in value is thus a request for covered damages.

Webster's defines compensatory damages as "damages awarded to make good or compensate for an injury sustained." Webster's Third New International Dictionary 463 (1993).[6] The complaint demands damages for the difference in value because the plaintiffs "never got what they bargained for and purchased." Comp. ¶ 18. In other words the plaintiffs request compensation for the loss of their expectation under the warranty agreement. The damages requested are therefore compensatory and within the Technology E&O policy's coverage.

3.

Finally, St. Paul contends that two policy exclusions preempt coverage. Courts construing exclusionary clauses "must adopt the construction . . . urged by the insured

---

[6]Black's defines compensatory damages as "[d]amages sufficient in amount to indemnify the injured person for the loss suffered." Black's Law Dictionary 416 (8th ed. 2004).

as long as that construction is not unreasonable."  Utica Nat'l Ins. Co. of Texas v. American Indem. Co., 141 S.W.3d 198, 202 (Tex. 2004), quoting Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. Hudson Energy Co., Inc., 811 S.W.2d 552, 555 (Tex. 1991).


St. Paul again argues that the complaint alleges that the plaintiffs' loss resulted from an "intentionally wrongful act" which the policy excludes from coverage. Compaq urges us to construe an "intentionally wrongful act" as one motivated by malice.  See State Farm Fire & Cas. Co. v. S.S., 858 S.W.2d 374, 378 (Tex. 1993) (construing an intentionally wrongful act exclusion to require more than reckless or wanton conduct).   Since the Texas Supreme Court in State Farm used that interpretation of a similar phrase when construing an "intentional injury exclusion," it is not unreasonable and is relevant here.  See Utica Nat'l, 141 S.W.3d at 202.  We have already concluded the two uses of the phrase "knowing breach" do not allege that Compaq distributed the computers knowing of their defect and certainly do not allege malice.   Because the complaint does not allege that Compaq committed an intentionally wrongful act, this exclusion is inapplicable.


St. Paul next asserts that a policy exclusion precludes coverage for the claims related to computer replacement or repairs.  That exclusion denies coverage for losses resulting from a "delay in delivery" or "failure to deliver [Compaq's] computer or electronic products or services."  The policy defines "computer or electronic products or services" as "any electronic equipment or computer hardware or software developed, distributed, licensed, marketed or sold by or for [Compaq]" and "any service for others, including maintenance or repair, performed or provided by or for you in connection with any electronic equipment or computer hardware or software." The policy provides an example of this exclusion's application, indicating that the

-14-

exclusion was intended to preclude coverage in the event of a delayed or failed delivery of a product or service after it had been promised to the insured's customer.[7]

While the complaint seeks "damages for breach of the obligation to repair or replace," it contains no allegations of a product or service delivery delay or failure giving rise to damages. The complaint does not allege that Compaq promised the plaintiffs that it would repair or replace their computers under the express warranty by a certain date and then reneged on that promise. Rather, the alleged damages arise from the asserted breach of the express warranty. The complaint alleges that Compaq determined – either rightly or wrongly – that it had no obligation to repair or replace the defective computers under its express warranty. The delay in delivery exclusion thus has no application here.

The complaint alleges an error and requests damages as both terms are defined by the Technology E&O policy and no exclusion applies. We conclude therefore that St. Paul has a duty to defend Compaq in the LaPray litigation under the Technology E&O policy.

B.

The first issue on Compaq's cross appeal is whether the district court erred in denying it "double duty" recovery of defense costs. The so-called "double duty" defense costs are those which Compaq incurred during the period of time that both the

_____

[7]The policy contained this example of how the delay in delivery exclusion applies:

> You promise to have a software product ready for a customer by a certain date. A delay in your development of that product makes you unable to have it ready by the date promised. As a result of not having that software, your customer loses sales. We won't cover such loss.

Thurmond and LaPray actions were pending and which benefitted its defenses in both actions. Compaq claims that it spent $22 million on defense costs that inured to both actions during the period from January 28, 2000, the date the LaPray action was filed, to March 15, 2001, the date the Thurmond action was dismissed. See Thurmond, 171 F. Supp. 2d at 667.

As previously noted Compaq filed a state court action in Minnesota in January 2002, seeking a declaration that St. Paul had a duty to defend the Thurmond litigation. The state court determined that St. Paul had no duty to defend in that action, and the Minnesota Court of Appeals affirmed. See Compaq, 2003 WL 22039551, at *5. St. Paul subsequently filed this declaratory judgment action in Minnesota state court arguing that it had no duty to defend Compaq in the LaPray litigation, and Compaq removed it to federal district court.

Shortly after St. Paul filed this action seeking a declaration that it had no duty to defend the LaPray litigation, it also filed a separate action to recover expenses it had incurred in defending the Thurmond case between March 10, 2000, the date the Thurmond plaintiffs filed their second amended complaint, and September 5, 2000, the date it withdrew its defense (St. Paul's recoupment action).[8] Compaq removed St. Paul's recoupment action to federal district court and filed a counterclaim for its remaining unpaid defense costs incurred before the Thurmond second amended complaint was filed. The district court granted summary judgment for St. Paul on Compaq's counterclaim, finding that because the Minnesota court had held that St. Paul had no duty to defend any part of the Thurmond action, including the original

_____

[8]After the Thurmond plaintiffs filed their second amended complaint, St. Paul reviewed its obligation to defend Compaq under the Technology E&O policy based on the allegations in that complaint. It determined that the complaint alleged intentionally wrongful conduct not covered by that policy and consequently withdrew its defense of that action retroactive to March 10, 2000, the date the second amended complaint was filed.

-16-

and first amended complaints, the counterclaim was barred by res judicata.  St. Paul Fire and Marine Ins. Co. v. Compaq Computer Corp., 377 F. Supp. 2d 719, 725 (D. Minn. 2005).  We affirmed.  St. Paul Fire and Marine Ins. Co. v. Compaq Computer Corp., 457 F.3d 766 (8th Cir. 2006).

In this case Compaq claims that St. Paul's duty to defend the LaPray litigation should include the obligation to pay the double duty defense costs incurred by Compaq.  In the district court St. Paul argued it could not be held liable for any defense costs associated with the Thurmond action since the Minnesota state courts had ruled that it had no duty to defend it.  The district court concluded that res judicata barred Compaq from relitigating the double duty defense costs.[9]

Compaq contends that previous rulings regarding St. Paul's duty to defend in the Thurmond litigation cannot have res judicata effect on its claim for defense costs incurred before the dismissal of that litigation because some of those costs benefitted the LaPray action.  St. Paul responds that the district court properly found that res judicata barred Compaq's attempt to secure reimbursement for those costs, and alternatively, that St. Paul's recoupment action in federal court should have res judicata effect this claim because it encompassed Compaq's counterclaim for defense costs.

The law of the forum that rendered the first judgment controls the res judicata analysis.  See 28 U.S.C. § 1738; Ruple v. City of Vermillion, 714 F.2d 860, 861–62 (8th Cir. 1983).  The district court determined that the Minnesota state court action which concluded that St. Paul had no duty to defend the Thurmond litigation had res judicata effect on Compaq's claim for double duty defense costs.  Minnesota law

---

[9]The district court also held that the law of the case and the terms of the Technology E&O policy prevented Compaq from recovering the double duty defense costs. Because of our resolution of the res judicata issue, we do not address the parties' arguments on these alternative grounds.

-17-

controls the res judicata effect of that action, and Minnesota courts review the application of res judicata de novo. Hauschildt v. Beckingham, 686 N.W.2d 829, 840 (Minn. 2004).

Under Minnesota law res judicata bars a subsequent claims where "(1) the earlier claim involved the same set of factual circumstances; (2) the earlier claim involved the same parties or their privies; (3) there was a final judgment on the merits; (4) the estopped party had a full and fair opportunity to litigate the matter." Id. A party is required to assert "'all alternative theories of recovery in the initial action'" to avoid the effects of res judicata. Id., quoting Dorso Trailer Sales, Inc. v. American Body and Trailer, Inc., 482 N.W.2d 771, 773–74 (Minn. 1992). Res judicata applies to all claims that could have been litigated in the earlier action in addition to those claims that actually were litigated. Id. Minnesota courts do not apply res judicata principles rigidly but rather focus on whether their application "would work an injustice on the party against whom the doctrine[] [is] urged." Id. at 837. The parties do not dispute that the second and third res judicata factors are satisfied here.

We conclude that the first res judicata factor is dispositive as to the effect of the Minnesota state court judgment. That factor requires us to consider how Minnesota courts have defined "claim" and how they analyze whether a subsequent claim arises out of the same set of factual circumstances. Minnesota courts use the terms "claim" and "cause of action" interchangeably, see Hauschildt, 686 N.W.2d at 840, and define it as "'a group of operative facts giving rise to one or more bases for suing.'" Id., quoting Martin ex rel. Hoff v. City of Rochester, 642 N.W.2d 1, 9 (Minn. 2002).

The fact that both of the underlying actions – Thurmond and LaPray – arise out of the same set of factual circumstances obfuscates this issue. The key fact giving rise to Compaq's state court cause of action against St. Paul was the insurer's decision that it had no duty to cover defense costs under the Technology E&O policy based on the allegations in the Thurmond complaint, not the sale of computers with defective

-18-

FDCs. Although the sale of computers with defective FDCs was a circumstance leading to the Thurmond litigation, it was the alleged breach of the duty to defend that litigation that gave rise to the Minnesota state court action which the district court determined to have res judicata effect on the double duty defense costs.

The key fact at the heart of the case before the court is not the sale of computers with defective FDCs, but rather the breach of St. Paul's duty to defend the LaPray action under the Technology E&O policy which is based on allegations in the LaPray complaint. This is a separate and distinct breach from that litigated in the Minnesota state courts. The allegations in the Thurmond and LaPray litigations were different. The alleged breach of the duty to defend Compaq in the Thurmond action is entirely distinct from the breach of the duty to defend Compaq in the LaPray litigation. That the factual circumstances that lead to the underlying actions may be the same is of no consequence to the res judicata analysis here. Because these are separate breaches of St. Paul's duty to defend occurring at different times and involving different underlying actions, the Minnesota state court action does not bar Compaq's claim for double duty defense costs here.

St. Paul offers as an alternative argument that St. Paul's recoupment action has res judicata effect on Compaq's claim for the double duty defense costs. Compaq contends that we should not consider whether that case has res judicata effect because St. Paul did not raise this argument in the district court. When a party fails to bring an argument in the district court, we may consider that argument waived, Yankton Sioux Tribe v. U.S. Dep't of Health and Human Servs., 2008 WL 2628931, at *9 n.6 (8th Cir. July 7, 2008), but we are free to affirm on any grounds supported by the record, American Home Assur. Co. v Pope, 487 F.3d 590, 598 (8th Cir. 2007).

Although the judgment in St. Paul's recoupment action was rendered in the federal district court, we apply Minnesota law on the substantive question of res judicata because state law controls this issue in a diversity action. See Hillary v. Trans

<u>World Airlines, Inc.</u>, 123 F.3d 1041, 1043 (8th Cir. 1997).  The second and third elements of res judicata – that the earlier claim involved the same parties or their privies and that there was a final judgment on the merits – are both satisfied.

The question here is whether Compaq's claim for double duty defense costs involved the same set of factual circumstances.  In St. Paul's recoupment action St. Paul sought to recoup funds paid to Compaq for the defense of the Thurmond action, including a portion of the double duty defense costs.  Compaq contested the action, seeking to retain the funds and counterclaiming for funds incurred in the Thurmond defense prior to March 10, 2000, which also included double duty defense costs.  The operative fact giving rise to St. Paul's recoupment action and to Compaq's counterclaim were the contested funds.  The right to the funds litigated in the recoupment action involved many of the same funds at issue in this litigation – they arose from the same work performed by the same attorneys.  The two actions thus involve the same set of factual circumstances.  If Compaq had any claim to reimbursement for funds expended in defense of the Thurmond action, it should have raised it at that point.

We also conclude that Compaq had a full and fair opportunity to litigate its claim in the recoupment action.  In the disagreement over whether Compaq had to repay those funds, it was required to present all alternative theories of recovery of contested funds.  It certainly could have raised the argument that it should not be required to repay funds because even if those funds were not covered under Thurmond, they were covered under LaPray.  Compaq was in the best position to recognize this avenue of recovery.  It failed to do so, and the final judgment in St. Paul's recoupment action therefore has a res judicata effect as to Compaq's claim for double duty defense costs here.

Moreover, Compaq admitted in its briefing to the state court during the Thurmond duty to defend litigation that the LaPray action was "essentially dormant"

from the time it was filed until after the federal court's dismissal of Thurmond in March 2001. Compaq stated the both Thurmond and LaPray were brought by the same class of plaintiffs and prosecuted by the same attorneys and that these plaintiffs only began active litigation in LaPray after their federal Thurmond action was dismissed. The record confirms Compaq's admission that LaPray was largely dormant until after Thurmond was dismissed. Compaq's attempt to recast the costs incurred in defending Thurmond as really LaPray costs appears to be a post hoc justification for reimbursement of fees.

C.

Compaq also appeals the district court's ruling denying statutory damages under Texas law. Compaq moved for statutory damages pursuant to the Texas Insurance Code's Prompt Payment of Claims statute. See Tex. Ins. Code §§ 542.051–.061. The Texas Prompt Payment statute provides deadlines for insurance companies to decide whether to accept or reject claims from an insured. If liable for a claim under a policy, an insurer which fails to comply with the prompt payment statute must pay the insured eighteen percent of the amount of the claim plus attorney fees in addition to the amount of the claim. § 542.060. The statute is triggered by the filing of a "first-party claim." § 542.051. The district court denied Compaq's motion for statutory damages on the ground that such damages were not available because the duty to defend is a third party claim under Texas law rather than a first party claim. See St. Paul Fire and Marine, CIV 03-5471, Doc. 190 (D. Minn. July 16, 2007).

Compaq contends that the district court erred in its conclusion. St. Paul argues for the first time on appeal that Minnesota's choice of law rules required the district court to apply Minnesota law rather than Texas law to the statutory damages claim. Compaq argues that St. Paul should not be permitted to raise this argument for the first time on appeal. It also contends that Minnesota's choice of law rules favors applying Texas law.

-21-

At the time the district court was considering whether an insured's claim for defense costs under a liability policy is a first or third party claim, there was a split of authority on that issue between lower Texas state court decisions and those of federal courts. The Texas Supreme Court has since authoritatively resolved the issue, holding that an insured's claim against its insurer for defense costs is a first party claim "because the insured is the only party who will suffer the loss or benefit from the claim." Lamar Homes, Inc. v. Mid-Continent Cas. Co., 242 S.W.3d 1, 17 (Tex. 2007). The district court did not have the benefit of that decision, but we now follow the Texas Supreme Court in holding that an insurer's breach of its duty to defend its insured gives rise to statutory damages under the Texas prompt payment statute. See id. at 20.

St. Paul asserts that even if a claim for statutory damages arising out of the breach of the duty to defend is a first party claim, those damages are still not available to Compaq because damages under the prompt payment statute are the equivalent of pre and post judgment interest. It argues that because interest on judgments is a procedural issue, Minnesota's choice of law rules dictate that Minnesota and federal law apply rather than the Texas statute.[10] Compaq suggests that St. Paul waived this argument by not raising it below.

St. Paul responds that a single sentence in its district court brief on the statutory damages issue preserves its argument on this point: "[u]nder Minn. Stat. § 549.09, which governs the award of prejudgment interest in this diversity case, the purpose of prejudgment interest under [sic] is 'to compensate the plaintiff for the loss of use of his money, and, by implication, to deprive the defendant of any [wrongful] gain.'" See St. Paul Fire and Marine, CIV 03-5471, Doc. 182, at 4, quoting Burniece v. Illinois Farmers Ins. Co., 398 N.W.2d 542, 544 (Minn. 1987). Taken in isolation this

---

[10]Minn. Stat. § 549.09 is Minnesota's prejudgment interest statute, and post judgment interest in a diversity case is governed by 28 U.S.C. § 1961.

sentence could be understood to preserve St. Paul's choice of law argument, as it now contends. Context is key in determining if a party has preserved an issue for appeal, however.

St. Paul's brief urged the district court that it would be unnecessarily punitive to assess statutory damages under Texas law given that Compaq would be compensated for the use of its money by receiving pre and postjudgment interest under Minnesota and federal law. The sentence on which it relies in arguing that it preserved its equivalency argument was offered in support of its position that recovery of statutory damages would be punitive, not to suggest that the Texas statutory damages provision should give way to Minnesota law. In the district court St. Paul spent forty two pages arguing various legal theories as to why statutory damages should not be assessed under the prompt payment statute. It never suggested that they were unavailable because such damages are equivalent to pre and postjudgment interest and that Minnesota and federal law should be applied instead of the Texas statute. We conclude that St. Paul waived its choice of law argument by not raising the issue before the district court. See Yankton Sioux Tribe, 2008 WL 2628931, at *9 n.6 (argument not raised in the district court is waived).

In sum, the issue of statutory damages should be remanded to the district court for calculation of the amount due Compaq. See §§ 542.058, 542.060.

V.

We affirm the judgment of the district court with the exception that we reverse its ruling denying Compaq statutory damages under Texas law. We remand that claim for calculation of the amount due Compaq and for entry of an amended judgment consistent with this opinion.

_____

-23-