# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

—————————

No. 09-3906

—————————

| | | |
|---|---|---|
| Chad L. Anderson, | * | |
| | * | |
| Plaintiff - Appellant, | * | |
| | * | Appeal from the United States |
| v. | * | District Court for the |
| | * | District of Minnesota. |
| EMC Mortgage Corporation, | * | |
| | * | |
| Defendant - Appellee. | * | |

—————————

Submitted: October 21, 2010
Filed: February 9, 2011

—————————

Before LOKEN, SMITH, and COLLOTON, Circuit Judges.

—————————

LOKEN, Circuit Judge.

After Chad Anderson's damaged credit rating caused him to lose favorable financing for a real estate purchase, he commenced this action in state court against a real estate adviser or broker, two credit reporting agencies (CRAs), and the furnisher of the adverse credit information, EMC Mortgage Company (EMC), which holds a second mortgage on Anderson's home. He alleged that EMC violated the Fair Credit Reporting Act (FCRA), 15 U.S.C. §§ 1681o, 1681s-2(b), by "furnish[ing] inaccurate information." Complaint ¶ 30. After the case was removed to federal court, the other

defendants were separately dismissed. Anderson now appeals the district court's[1] grant of summary judgment dismissing his FCRA claim against EMC. Anderson v. Experian Info. Solutions, Inc., 2009 WL 3644923 (D. Minn. 2009). Reviewing the grant of summary judgment *de novo*, we affirm.

On December 5, 2006, Anderson mailed EMC a check for his monthly mortgage payment that is due the first day of each month. EMC received the check and credited Anderson's account, but the check was lost or destroyed before being presented to Anderson's bank for payment. Anderson made monthly payments in January, February, and March 2007, keeping his account with EMC current. EMC at last presented a substitute check for the December payment to Anderson's bank in mid-March.[2] As Anderson had closed the bank account without leaving funds to pay the December check, the bank returned the substitute check to EMC unpaid with the notation "Closed Account." EMC then "un-credited" the December payment and reported to the defendant CRAs in early April that Anderson's account was thirty days past due. Meanwhile, Anderson mailed EMC a check for his April monthly payment on April 6.

Some time in April, EMC advised Anderson (according to his testimony, which must be credited for summary judgment purposes) that his *April* mortgage payment was past due. Anderson disagreed and furnished EMC a copy of his April check. EMC employees insisted Anderson had missed his April payment, and his discussions with a series of customer-service representatives failed to discover that the dishonored December check was the source of the problem. In May, EMC again reported to

---

[1]The Honorable Patrick J. Schiltz, United States District Judge for the District of Minnesota.

[2]A substitute check is a new type of negotiable instrument created by Congress in 2003 that is the legal equivalent of the original check for all purposes. See 12 U.S.C. §§ 5002(6) & (16), 5003(b).

CRAs that Anderson's account was thirty-days past due. Anderson made what he called an "extra payment" in May, making his EMC account again current. By then, his real estate adviser said Anderson had lost favorable financing for the purchase because of adverse credit reports. EMC's subsequent reports to CRAs showed that Anderson's account was current but had been past due for two months.

As the district court recognized, the duties of EMC as a furnisher of credit information under 15 U.S.C. § 1681s-2(b) are triggered by notice that its information is being disputed from a CRA, not from the consumer. See § 1681i(a)(2); Gorman v. Wolpoff & Abramson, LLP, 584 F.3d 1147, 1154 (9th Cir. 2009). Anderson's Complaint alleging that EMC reported inaccurate data failed to allege a triggering CRA notice and therefore failed to state a claim against EMC under the FCRA. See, e.g., Ori v. Fifth Third Bank, 603 F. Supp. 2d 1171, 1174 (E.D. Wis. 2009).

Rather than challenge the sufficiency of Anderson's Complaint, EMC moved for summary judgment after the close of discovery. In support, EMC submitted Automated Consumer Dispute Verification (ACDV) forms that it received from the defendant CRAs in September 2007, December 2007, and September 2008 advising that EMC's reports of account status had been challenged; its responses to those CRA notices; and evidence that Anderson's account was in fact past due from the time the substitute December check was dishonored in March 2007 until Anderson made the "extra payment" in May 2007 that restored the account to current status. Because this past due information was accurate when reported, EMC argued, Anderson's FCRA claim that EMC breached a duty under § 1681s-2(b) failed as a matter of law. In response, Anderson submitted additional affidavits and argued that (i) his mortgage payment obligation "was never 30 days late for two separate months" or even one month;[3] (ii) EMC failed to reasonably investigate the account information and correct

[3]More specifically, he argued that an account is not delinquent until past due for 30 days. He made a payment on April 6, less than 30 days after the substitute December 2006 check was dishonored; thus, his account was never 30 days past due.

-3-

the inaccurate information it had reported in response to the CRA notices; and (iii) "EMC continues to inaccurately report Anderson's account as 30 days late in April, May and June 2007 to Anderson's detriment."

In its Order granting summary judgment, the district court addressed Anderson's contention "that he was never thirty days late on his EMC account." After careful review of Minnesota law on the effect of dishonoring a check that is not timely presented, the court concluded that the December payment obligation was not suspended during the period between the date of the December check and its dishonor in March 2007 because Anderson closed the bank account without maintaining sufficient funds to cover the check. Therefore, EMC accurately reported in April and May 2007, and continued to accurately report thereafter, that Anderson's account was thirty days past due for each of two months.

On appeal, Anderson does not challenge the district court's ruling that his account was more than thirty days past due as a matter of law when EMC reported that account status in April and May 2007. Rather, he argues that summary judgment was inappropriate because the district court noted that an "Experian entry is inaccurate insofar as it states that Anderson's account was delinquent in May and June (as opposed to April and May)," and EMC failed to investigate and correct this inaccuracy. This contention is based upon a document entitled "Your Credit Report" dated June 25, 2009, which was attached with no further explanation as Exhibit G to an affidavit by Anderson's attorney and filed along with his Memorandum in Opposition to EMC's motion for summary judgment. Assuming this theory of FCRA liability was even argued to the district court, it is without merit.[4]

---

[4]Normally, an issue may not be raised for the first time on appeal. St. Paul Fire & Marine Ins. Co. v. Compaq Computer Co., 539 F.3d 809, 822 (8th Cir. 2008). There was no hint of this theory of FCRA liability in Anderson's Complaint and only passing references to the mistake in his Memorandum in Opposition.

The document "Your Credit Report" was a summary of what multiple CRAs were reporting about Anderson's account as of June 2009 by a source not identified in the record. Obviously, "the Experian entry" on that document was not prepared by Experian, a defendant CRA. There is no other evidence that Experian ever issued a report mistakenly reporting the past due months as May and June. Indeed, the evidence of record is to the contrary -- Experian's September 2007 and September 2008 ACDV notices to EMC correctly listed the past due months as April and May. Nor is there evidence that Anderson ever complained to Experian about this specific mistake, that Experian ever notified EMC that this mistake was being challenged, or that EMC failed to investigate that challenge after receiving an FCRA triggering notice from a CRA.

Assuming this theory was preserved in the district court by the last-minute submission of a third party's June 2009 report, the "Your Credit Report" document failed to raise a genuine issue of material fact whether EMC violated 15 U.S.C. §§ 1681o and 1681s-2(b) by failing to investigate and correct an immaterial discrepancy as to which two months in 2007 Anderson's account was thirty days past due. Because a furnisher's obligation to conduct a reasonable investigation under § 1681s-2(b) arises when it receives a notice of dispute from a CRA, it need investigate only "what it learned about the nature of the dispute from the description in the CRA's notice of dispute." Gorman, 584 F.3d at 1157; see Westra v. Credit Control of Pinellas, 409 F.3d 825, 827 (7th Cir. 2005); Scheel-Baggs v. Bank of Amer., 575 F. Supp. 2d 1031, 1040 (W.D. Wis. 2008). Here, ACDVs from the defendant CRAs notified EMC that its reporting of the account as past-due for two months had been challenged. EMC investigated, correctly determined that the reported account status was accurate, and verified that information to the CRAs. Its duties as a furnisher of information under the FCRA required no more.

The judgment of the district court is affirmed.

_____