BENTON, J.
Elizabeth Anne O’Brien appeals the summary, declaratory, partial[1] final judgment ruling that she had no right to proceeds of her uncle Calvin L. Todd, Jr.’s life insurance policy. The trial court concluded that the late Mr. Todd had, in compliance with the policy’s terms, substituted his younger daughter for his niece as a beneficiary some years before he died. We affirm.
On May 4, 1990, Prudential Insurance Company (Prudential) issued the life insurance policy in question under which — as is customary, see 29 Bertram Harnett & Irving I. Lesnick, Appleman on Insurance § 180.08 (2d ed. 2006) (“[I]n most life insurance policies the right to change the beneficiary is reserved.”) — Mr. Todd, as the policy’s owner, was free to change beneficiaries. Insofar as pertinent, the policy provided only:
You may designate or change a beneficiary. Your request must be in writing and in a form that meets our needs. It will take effect only when we file it at our Home Office; this will be after you send the contract to us to be endorsed, if we ask you to do so. Then any previous beneficiary’s interest will end as of the date of the request. It will end even if the insured is not living when we file the *1276 request. Any beneficiary’s interest is subject to the rights of any assignee we know of.
On October 18, 1999, Mr. Todd executed a Prudential form[2] adding his newly-adopted daughter, Heather Ashley Todd, and removing his niece, Ms. O’Brien, as a beneficiary.[3] He designated Paul and Gloria McCreary as guardians of the property both for Heather Ashley Todd and for his older daughter, Madison Anne Todd, who remained a co-beneficiary. Each daughter was to receive half of the insurance proceeds.
After Mr. Todd died on September 28, 2007, internal Prudential emails sent October 26 and 27, 2007, stated that the policy’s beneficiaries were Madison and Heather Todd, but also said that Prudential needed to confirm the beneficiaries of record, and that an April 17, 1996, change[4] was the last fully processed[5] beneficiary change on the policy.
In response to the complaint for declaratory judgment Ms. O’Brien filed against Robert and Tonya Hurst (the adoptive parents of Heather Ashley Todd), Carol Todd, the decedent’s ex-wife and mother of Madison Anne Todd, and Prudential, Prudential counterclaimed for declaratory relief and interpleaded the Estate of Calvin Todd (Estate) and T.T. Todd Corporation. On June 23, 2009, Ms. O’Brien filed a motion for summary judgment, arguing *1277 that her uncle had not strictly complied with the requirements of his life insurance policy in effecting the change of beneficiary, and that Prudential had not “accepted” his 1999 (or 2000) changes. On September 11, 2009, both the Hursts and the Estate filed cross motions for summary judgment, arguing that Mr. Todd’s change of beneficiaries had been effective under the policy.
On November 20, 2009, the trial court denied Ms. O’Brien’s motion for summary judgment and granted summary judgment for the Hursts and the Estate.[6] Finding that Prudential had received the 1999 change of beneficiary form and filed it in its home office, the trial court stated:
Thereafter, another discussion took place via correspondence and telephone calls relating to the status of Mr. and Mrs. McCreary in overseeing the proceeds of the policy; while the girls remained minors. In addition, Prudential entered into a discourse with Mr. Todd regarding the method of payment, whether lump sum or other alternatives. While these additional matters constitute disputed issues of fact, they are not material to the issue of designation of beneficiaries.
The trial court found that Mr. Todd had strictly complied with the applicable policy provisions, and specifically concluded that he had met the “requirements of using the form required by Prudential in designating a change of beneficiary....”
On review of summary judgment, “this court applies the de novo standard of review to determine whether there are genuine issues of material fact and whether the trial court properly applied the correct rule of law.” Futch v. Wal-Mart Stores, Inc., 988 So.2d 687, 690 (Fla. 1st DCA 2008) (citing Volusia County v. Aberdeen at Ormond Beach, L.P., 760 So.2d 126, 130 (Fla.2000); Sierra v. Shevin, 767 So.2d 524, 525 (Fla. 3d DCA 2000)). It has been specifically held that “ ‘construction of an insurance policy is a question of law for the court and is subject to de novo review.’ ” Liebel v. Nationwide Ins. Co. of Fla., 22 So.3d 111, 114-15 (Fla. 4th DCA 2009) (quoting Flaxman v. Gov’t Employees Ins. Co., 993 So.2d 597, 599 (Fla. 4th DCA 2008)).
Contract principles apply to the interpretation of an insurance policy, which is a type of contract. See Am. Strategic Ins. Co. v. Lucas-Solomon, 927 So.2d 184, 186 (Fla. 2d DCA 2006). “In construing a contract, the court should consider its plain language and take care not to give the contract any meaning beyond that expressed. When the language is clear and unambiguous, it must be construed to mean ‘just what the language therein implies and nothing more.’ ” Walker v. State Farm Fire & Cas. Co., 758 So.2d 1161, 1162 (Fla. 4th DCA 2000) (citations omitted).
In general, the right of an insured owner to change the beneficiaries of a life insurance policy “depends on the terms of contract between the insurer and insured as expressed in the insurance policy.” Martinez v. Saez, 650 So.2d 668, 669 (Fla. 3d DCA 1995) (quoting Shuster v. N.Y. Life Ins. Co., 351 So.2d 62, 64 (Fla. 3d DCA 1977)). In the present case, Prudential is the insurer and Mr. Todd is the insured. Ms. O’Brien makes no claim here *1278 or below that her uncle was under any legal obligation to make or keep her as a beneficiary under the policy. See generally Palm Lake Partners II, LLC v. C & C Powerline, Inc., 38 So.3d 844, 849 (Fla. 1st DCA 2010) (“A ‘promisor and a promisee can by agreement create a duty to a beneficiary which cannot be varied without his consent. But in the absence of such an agreement the parties retain control over the contractual relation they have created.’ ”) (quoting Restatement (Second) of Contracts 311 cmt. f. (1981)).
Ms. O’Brien grounds her entire position on Prudential’s putative rights under the contract, rights which as to her are jus tertii She asserts no rights that Prudential itself could not have asserted (if it had been so inclined) when she argues “that a beneficiary under a life insurance policy may be changed only by strict compliance with the conditions set forth in the policy.” Brown v. Di Petta, 448 So.2d 561, 562 (Fla. 3d DCA 1984) (citing Gerstel v. Arens, 143 Fla. 20, 196 So. 616 (1940); Warren v. Prudential Ins. Co. of Am., 138 Fla. 443, 189 So. 412 (1939); Sheppard v. Crowley, 61 Fla. 735, 55 So. 841 (1911)).[7] Yet Prudential does not make this argument or in any other way align itself with Ms. O’Brien’s efforts to claim the policy proceeds (or a portion thereof) for herself.
Pretermitting the question whether Ms. O’Brien should be heard to urge the rights of a third party who has elected to stand mute, we turn to the pertinent policy language:
You may designate or change a beneficiary. Your request must be in writing and in a form that meets our needs. It will take effect only when we file it at *1279 our Home Office; this will be after you send the contract to us to be endorsed, if we ask you to do so.
Applying the policy language, the case turns on the question whether Mr. Todd complied with the requirement that his request to change beneficiaries be “in a form that meets [Prudential’s] needs.”[8]
The phrase “in a form that meets our needs” must be read as creating some objectively reasonable standard. Otherwise, the phrase would confer on Prudential the unilateral right to decide which changes of beneficiary, if any, would be acceptable in Prudential’s unfettered discretion, effectively giving Prudential a veto over any change of beneficiary under the life insurance policy. Such an unlikely reading of the policy is completely at odds with the agreement read as a whole, which gives the policyholder, not Prudential, the initial l’ight to designate, and thereafter to change, beneficiaries.
The phrase “in a form that meets our needs” plainly requires that a beneficiary request contain enough information to allow Prudential to act on the request. Compare McDaniel v. Liberty Nat’l Life Ins. Co., 722 So.2d 865, 866 (Fla. 5th DCA 1998) (policy holder failed to comply with the terms of her policy when she signed a form to change her last name, and checked a box next to a line entitled “beneficiary designation,” but left the line blank, even though she had told an agent that she would like to change her beneficiary by naming her new husband) with Smith v. Wilson, 440 So.2d 442, 444 (Fla. 1st DCA 1983) (holding change of beneficiary effective where city employee listed a new beneficiary for his group life insurance policy in an “Employee Personal Data Form” next to the words “Designated Beneficiary,” even though this “did not comply with the policy terms”). A beneficiary request will not be in a form that meets Prudential’s needs if it is not intelligible or if the new beneficiary cannot be ascertained. If a policy holder submitted a beneficiary change form that named “John Smith of New York” as a new beneficiary, it would not be feasible for Prudential to act on the request without additional identifying information.
In the present case, however, Mr. Todd clearly designated his daughters Madison Anne Todd and Heather Ashley Todd beneficiaries, nominating Paul and Gloria McCreary as guardians of the property of each. Prudential’s objection was not that it did not understand who Mr. Todd intended as beneficiaries — he clearly set out his daughters’ names, ages, and their relationship to him. Nor was there any question about the McCrearys’ identity. Prudential objected, not to the form in which the information was conveyed to it, but to the nature and substance of legal arrangements Mr. Todd contemplated for his children after his demise. Prudential did not approve of Mr. Todd’s indicating his choice of the McCrearys as presumptive guardians.[9] Prudential wanted the *1280 McCrearys designated (future) trustees, rather than (future) guardians.
There are differences between guardians and trustees, to be sure. By definition, a guardianship is not a trust. Restatement (Third) of Trusts § 5 (2008). An express trust is “a fiduciary relationship with respect to property, arising from a manifestation of intention to create that relationship and subjecting the person who holds title to the property to duties to deal with it for the benefit of charity or for one or more persons, at least one of whom is not the sole trustee.” Restatement (ThiRd) of Trusts § 2 (2003). “A property arrangement may constitute a trust ... even though such terms as ‘trust’ or ‘trustee’ are not used.... Conversely, use of the word ‘trust’ or ‘trustee’ does not necessarily mean that a trust relationship is involved.” Restatement (Third) of Trusts § 5 cmt. a (2003).
Although a guardian is also a fiduciary, a guardian 'is not a trustee. See Restatement (Third) of Trusts § 5 cmt. c (2003). “The functions and duties of a guardian are narrower than those of a trustee, are fixed by law, and do not depend, as in the case of a trust, on the manifestation of anyone’s intention.” 1 Austin Wakeman Scott, William Franklin Fratcher, & Mark L. Ascher, Scott and Ascher on Trusts, § 2.3.3 (5th ed. 2006). Trustees hold legal title to trust property while guardians do not hold legal title to wards’ property. See Restatement (Third) of Trusts § 5 cmt. c (2003). Upon petition on either the death or incapacity of the last surviving parent, the court may appoint a guardian of the property, and the last surviving parent has the right to nominate a preneed guardian.[10] A trustee may also be court-appointed, when not named by the settlor.
Why Prudential was so insistent that the McCrearys be designated trustees, rather than guardians, is something of a mystery, in light of Prudential’s letter to Mr. Todd of December 15, 2000, in which Prudential warned that denominating the McCrearys trustees might not be a good idea:
We would like to point out to you, that you have requested [sic] a trustee for minor beneficiaries. The trustees indicated on this form are not trustees under trust law and, therefore, would not *1281 be protected by state trust law. Also, since this is not a formal trust agreement, the persons named under this arrangement would be under no legal obligation to use the proceeds exclusively for the benefit of the beneficiaries. Because of the risks involved in specifying this type of arrangement, you may want to consult you [sic] legal advisor.
Presumptive trustees, like presumptive guardians, might have predeceased the daughters. In any event, under the life insurance policy, the choice between trustees and guardians was Mr. Todd’s, not Prudential’s. Regardless of the McCrear-ys’ status or legal capacity, Prudential well understood that Mr. Todd had chosen his daughters as beneficiaries under the policy, and has not suggested otherwise in these proceedings.
Affirmed.
THOMAS and ROWE, JJ„ concur.

. " 'A judgment is final when it adjudicates the merits of the cause and disposes of the pending action, leaving nothing further to be done but the execution of the judgment.' ” Gore v. Hansen, 59 So.2d 538, 539 (Fla. 1952) (quoting Howard v. Ziegler, 40 So.2d 776, 777 (Fla. 1949)). Other matters remained to be decided in the present case, including whether the beneficiaries were to receive lump sum payments. With respect to Ms. O’Brien, however, "no other judicial labor remained to be done by the trial court,” McQuaig v. Wal-Mart Stores, Inc., 789 So.2d 1215, 1216 (Fla. 1st DCA 2001), so that the de facto summary judgment adjudicating her claim was final as to her.

. The insurance company’s multi-purpose form consists of three pages. Page two, entitled "Beneficiary Request” is used to name new beneficiaries, and page three, entitled "Method of Payment Request” is used to specify a method of payment other than the default lump sum.

. On November 4, 1999, Prudential responded to Mr. Todd, requesting additional information to "process” his request. Prudential enclosed a new form for Mr. Todd to sign that listed Madison and Heather Todd as the beneficiaries but changed the description of the McCrearys from guardians of the property to trustees. Mr. Todd did not return the enclosure to Prudential.

. On January 15, 1996, Mr. Todd had executed a multi-purpose form, obtained from Prudential, to name new primary beneficiaries. On the form, he designated his sister, Cynthia Todd McMahon, as guardian for his niece, Ms. O’Brien (who was seventeen at the time), for half of the proceeds, and Ms. McMahon as guardian of the property for his (then only) daughter, Madison Anne Todd, for the other half of the proceeds. Prudential responded by sending a new form for him to sign that named Ms. McMahon as trustee of each girl’s insurance proceeds. Mr. Todd signed the form, and, on April 17, 1996, Prudential mailed him a confirmation, entitled "Beneficiary Provision,” that listed Ms. O’Brien and Madison Anne Todd as the two beneficiaries of the policy. Mr. Todd had changed the beneficiaries on the policy at least once before 1996.

.Nothing in the insurance policy requires "processing” of any kind in order to render a duly filed request for change of beneficiary to become effective. After he requested the change of beneficiaries, Mr. Todd executed a second multi-purpose form on March 8, 2000, but only the first and third pages. On the third page, he checked the option for "Held at Interest” but then wrote in special instructions at the bottom of the form: "$51,999.96 per child per year paid monthly @ the rate of $4,333.33 paid to Paul & Gloria McCreary. On Jan. 2nd 2030 the balance is to be paid to both children.” On May 18, 2000, Prudential responded: "We are returning the beneficiary change form which was submitted on the above mentioned contract. Unfortunately, we are unable to act on the request at this time, and have prepared a new provision for your review.” The enclosed provision, on which Prudential asked Mr. Todd to insert and initial the relationship of the McCrearys to Mr. Todd, listed Madison and Heather Todd as beneficiaries but changed the settlement option to "Fixed Amount.” Mr. Todd did not respond to this letter, nor did he respond to the follow-up letters that Prudential sent on July 5, 2000, and on December 15, 2000. In depositions, Prudential representatives testified that Prudential never fully processed Mr. Todd’s 1999 and 2000 requests.

. See generally McQuaig v. Wal-Mart Stores, Inc., 789 So.2d 1215 (Fla. 1st DCA 2001). The Estate’s motion for summary judgment took the alternative, contingent position that, if Mr. Todd had not effectively changed the beneficiary of the policy from Ms. O'Brien to Heather Todd, then the Estate was the "proper vested beneficiary” of the policy. The trial court ruled that “[t]o the extent that the estate claimed an alternative method of relief, that method is rendered moot by the other rulings announced in this order."

. The appellant’s brief cites Brown v. Di Petta, 448 So.2d 561 (Fla. 3d DCA 1984), Gerstel v. Arens, 143 Fla. 20, 196 So. 616 (1940), Warren v. Prudential Ins. Co. of Am., 138 Fla. 443, 189 So. 412 (1939), and Sheppard v. Crowley, 61 Fla. 735, 55 So. 841 (1911), for the need for strict compliance with the policy’s requirements to effect a change in beneficiary. But to the extent the cited decisions set out operative facts, each is factually distinguishable in important ways.
In Brown, the Third District held that "the decedent failed to comply with procedures of the insurance company required to effectuate a change of beneficiary” and that his "mere intent to change the beneficiary of the policy was legally insufficient absent an effective designation of beneficiary on the form required by the insurer.” 448 So.2d at 562. In the present case, Mr. Todd used Prudential’s forms, which were duly filed at the home office as required.
In Warren, the insurance policy provided that an insured could change a beneficiary "by written notice to the company at its home office” and that the change would take effect "when a provision to that effect is endorsed on or attached to the policy by the company.” 189 So. at 413. The supreme court upheld the lower court's (chancellor’s) finding that the insured had not complied with the terms of the policy because he failed to transmit the required notice to the insurer, much less obtain the endorsement. Id. In the present case, Mr. Todd sent the forms to Prudential, and the policy does not require endorsement.
The supreme court in Gerstel enforced another policy provision requiring the insurer to endorse the policy in order to effect a change in beneficiary. 196 So. at 618. Again, no endorsement requirement exists in the policy at issue in the present case.
Similarly, in Sheppard, a life insurance contract provided that the policyholder could change the beneficiary "by filing with the society a written request duly acknowledged, accompanied by this contract, such change to take effect upon the indorsement of the same on this contract by the society, provided it has not been assigned....” 55 So. at 841. The policy holder executed a request to change the beneficiary on October 12, 1908, but the insurance society did not endorse the change on the policy until October 15, 1908, after the policy holder had died. The supreme court held no change could take effect until the insurance company endorsed the contract, and that, because the "transaction was pending and unfinished” when he died, the change was not effective. Id. at 841-42. Nothing of the kind occurred here.

. The parties agree that the request to change beneficiaries was in writing and that Prudential filed the written request in what it treats as its Home Office.

. Parents can nominate a preneed guardian of the property by making a written declaration and filing it with the clerk of court. See § 744.3046, Fla. Stat. (2009). Prudential objected to any suggestion of the McCrearys' prospective legal capacity as guardians.
More than a matter of form (the only policy criterion at issue), legal capacity has substantive significance. The doctrine of res judicata does not, for example, bar subsequent suit by the same person when the plaintiff brings the later suit in a different legal capacity:
[A] number of cases have found a lack of identity of the quality or capacity of the parties suing sufficient to defeat the defense of res judicata, for example: Youngblood v. *1280 Taylor, 89 So.2d 503 (Fla.1956) (unsuccessful suit by father on behalf of his son as a next friend against driver causing son's injuries did not bar father's later action on his own behalf to recover damages recoverable by father based on same negligent conduct); Jacksonville Terminal Company v. Hodge, 260 So.2d 521 (Fla. 1st DCA 1972) cert. denied, 409 U.S. 980, 93 S.Ct. 311, 34 L.Ed.2d 243 (1972) (prior unsuccessful wrongful death action by widow against railroad on theory husband had not commenced his employment on night of accident did not bar subsequent action by widow as administratrix of husband’s estate under Federal Employers' Liability Act).
Couch Const. Co. ex rel. Kimmins Corp., Inc. v. Fla. Dep’t of Transp., 537 So.2d 631, 632 (Fla. 1st DCA 1988).

. Florida law provides that upon petition, a court can appoint a guardian of the property for a minor. See § 744.331, Fla. Stat. (2009); § 744.342, Fla. Stat. (2009). A parent is able to nominate a preneed guardian of the property by making a written declaration and filing it with the clerk of court. See § 744.3046, Fla. Stat. (2009). Upon either the filing of a petition for incapacity of the last surviving parent or a petition for appointment of a guardian upon the death of the last surviving parent, the clerk “shall produce the declaration.” § 744.3046(3), Fla. Stat. (2009). Production of the declaration "constitutes a rebuttable presumption that the designated preneed guardian is entitled to serve as guardian,” but the "court is not bound to appoint the designated preneed guardian if the designated preneed guardian is found to be unqualified to serve as guardian.” § 744.3046(4), Fla. Stat. (2009).