# United States Court of Appeals
## For the Eighth Circuit

_____

No. 13-2147

_____

St. Jude Medical S.C., Inc., a Minnesota corporation

*Plaintiff - Appellant*

v.

Annette Cormier, an individual

*Defendant - Appellee*

_____

Appeal from United States District Court
for the District of Minnesota - Minneapolis

_____

Submitted: February 13, 2014
Filed: March 11, 2014

_____

Before SMITH, BEAM, and BENTON, Circuit Judges.

_____

BENTON, Circuit Judge.

St. Jude Medical S.C., Inc. sued its competitor Medtronic U.S.A., Inc. for tortiously interfering with its business relationship with Joe Cormier, an employee. They arbitrated their claims. St. Jude then sued Joe's wife Annette Cormier, a former employee, for related claims. Annette moved for judgment on the pleadings,

invoking res judicata. The district court granted judgment. St. Jude appeals. Having jurisdiction under 28 U.S.C. § 1291, this court reverses in part and remands.

I.

Annette worked for St. Jude as a technical service specialist, Joe as a sales representative. In 2009, Annette left her at-will employment with St. Jude to work for Medtronic. Joe's sales dropped significantly. St. Jude sued Medtronic in Florida state court, alleging unfair competition and tortious interference with its advantageous business relationship with Joe and his accounts. Neither Annette nor Joe was party to the lawsuit. St. Jude and Medtronic privately arbitrated their claims. (In arbitration, St. Jude also claimed Medtronic interfered with Joe's term-of-years employment contract.) The arbitration panel found that Medtronic had tortiously interfered with St. Jude's contractual and business relationship with Joe. It awarded St. Jude lost profits.

St. Jude then sued Annette in federal court, alleging unjust enrichment, breach of contract, tortious interference with Joe's employment agreement, misappropriation of trade secrets, civil conspiracy, and breach of fiduciary duties. Annette asserted that res judicata and collateral estoppel barred St. Jude from relitigating claims asserted in arbitration. The district court granted judgment to Annette.

This court reviews de novo a grant of judgment on the pleadings and a dismissal based on res judicata. *Minch Family LLLP v. Buffalo-Red River Watershed Dist.*, 628 F.3d 960, 965 (8th Cir. 2010). This court views St. Jude's factual allegations as true and grants all reasonable inferences in its favor. *Id.*

II.

The parties dispute which state law applies. "The law of the forum that rendered the first judgment controls the res judicata analysis." *St. Paul Fire & Marine Ins. Co. v. Compaq Computer Corp.*, 539 F.3d 809, 821 (8th Cir. 2008); *Austin v. Super Valu Stores, Inc.*, 31 F.3d 615, 618 (8th Cir. 1994). Annette believes this principle "arguably" does not apply because her employment agreement with St. Jude specified it would be interpreted under Minnesota law "without regard to the principles of conflict of laws." The district court did not decide this issue, analyzing the preclusive effect of the arbitration award under both Florida and Minnesota law.

Florida law applies. Florida was the forum that rendered the arbitration judgment. This court must give it preclusive effect. *See C.H. Robinson Worldwide, Inc. v. Lobrano*, 695 F.3d 758, 761, 764 (8th Cir. 2012) (applying Louisiana's res judicata rules even though the defendant's employment agreement required that the agreement be governed by Minnesota law); *Myer v. Americo Life, Inc.*, 469 F.3d 731, 733 n.7, 734 n.8 (8th Cir. 2006) (applying Texas law to determine the preclusive effect of a Texas state court judgment in an action for breach of an employment contract with a Missouri choice-of-law provision).

III.

Florida has four requirements for res judicata: (1) identity of the parties, (2) identity of the quality in the person for or against whom the claim is made, (3) identity of the cause of action, and (4) identity of the thing sued for. *Dadeland Depot, Inc. v. St. Paul Fire & Marine Ins. Co.*, 945 So. 2d 1216, 1235 (Fla. 2006); *Tyson v. Viacom, Inc.*, 890 So. 2d 1205, 1209 (Fla. Dist. Ct. App. 2005).

A.

Annette asserts an "identity of the parties," although she was not party to the arbitration between St. Jude and Medtronic. For this requirement, Florida includes the parties' privies. *See **Seaboard Coast Line R.R. Co. v. Industrial Contracting Co.***, 260 So. 2d 860, 862-63 (Fla. Dist. Ct. App. 1972). Privity is a question of fact, determined case by case. *Id.* at 864; ***Thompson v. Haynes***, 249 So. 2d 69, 71 (Fla. Dist. Ct. App. 1971) ("There is no generally prevailing definition of privity which can be automatically applied to all cases involving the doctrine of res judicata. Who are privies requires careful examination into the circumstances of each case as it arises."), *citing* **46 Am. Jur. 2d, Judgments** § 532, 683-84.

Annette maintains she was in privity with Medtronic in the arbitration based on St. Jude's allegations that Medtronic was vicariously liable for her acts as its employee. *See **ICC Chem. Corp. v. Freeman***, 640 So. 2d 92, 93 (Fla. Dist. Ct. App. 1994); ***Atlantic Cylinder Corp. v. Hetner***, 438 So. 2d 922, 923 (Fla. Dist. Ct. App. 1983); ***Hinton v. Iowa Nat'l Mut. Ins. Co.***, 317 So. 2d 832, 837-38 (Fla. Dist. Ct. App. 1975); ***Phillips v. Hall***, 297 So. 2d 136, 137 (Fla. Dist. Ct. App. 1974). The district court agreed, relying on St. Jude's allegations that Medtronic committed the torts "by and through" Annette, who was acting "on behalf of and for the benefit" of Medtronic within the course and scope of her employment:

> Annette Cormier and other Medtronic employees, on behalf and for the benefit of Medtronic, have acted in concert with, and otherwise induced, Joe Cormier to breach his contract with and duties owed to St. Jude.
>
> Medtronic, by and through Annette Cormier, Mancini and other Medtronic employees acting within the course and scope of their employment with Medtronic, has: (a) wrongfully and tortiously interfered with the advantageous business relationships that St. Jude has with: (i) Joe Cormier; and (ii) Joe Cormier's Assigned Accounts, (b) tort[iously] interfered with Joe Cormier's October 2007 Employment

-4-

Agreement with St. Jude, and (c) otherwise engaged in unfair competition to the harm and detriment of St. Jude.

Since Annette Cormier and Mancini terminated employment with St. Jude and began working for Medtronic, Joe Cormier has been diverting CRM business from St. Jude to Medtronic while remaining employed by St. Jude as contemplated and expected by Medtronic.

*Demand for Arbitration and Statement of Claims*, **St. Jude Medical S.C., Inc. v. Medtronic USA, Inc.**, Case No. 10-07896 CA 25, at ¶¶ 22, 24.

The district court correctly found "identity of the parties" for St. Jude's claims based on Annette's acts *as a Medtronic employee*. However, the district court erred in finding privity for St. Jude's claims based on Annette's acts *while employed by St. Jude*.

Annette asserts—and the district court relied on—the general principle that Florida law bars a "plaintiff from relitigating his claim against the servant when a judgment has been entered in a prior suit brought against the master involving the same issues." **Hinton**, 317 So. 2d at 837-38. However, this rule applies "when the master is not guilty of any independent or concurrent wrong, but must be held, if at all, under the doctrine of respondeat superior." **Id.** at 836, 838 ("There was a single wrongful act, and it was the plaintiff's privilege to treat it as that of the actor or as that of the master."). *See also* **Mitchell v. Edge**, 598 So. 2d 125, 127 (Fla. Dist. Ct. App. 1992) (discussing *Atlantic Cylinder*, *Hinton*, and *Phillips*, and noting "[t]he result reached in those cases grows out of a concept that where there is a master-servant or principal-agent relationship *and where the master or principal's liability derives solely from the acts of the servant or agent*, a *satisfied* judgment for a plaintiff against one will bar an action by the same plaintiff against the other") (emphasis of first phrase added).

Medtronic's liability did not derive solely from Annette's acts; rather Medtronic was independently liable for tortiously interfering with Joe's business relationship with St. Jude. As St. Jude alleged in arbitration, Medtronic committed torts by and through "Annette and *other Medtronic employees*" (emphasis added). And, as the arbitration panel found, Medtronic's liability stemmed from the conduct of Medtronic management in recruiting and hiring Annette. (The panel framed the legal issue as "whether the way in which Medtronic hired Annette rises to the level of tortious interference with St. Jude's contractual and business relationship with Joe.")

> Medtronic, however, went beyond being a passive beneficiary of this situation. It is clear that Medtronic management was aware of representations made by Joe Cormier that if Medtronic hired Annette substantial business would follow. Medtronic knew of Joe's contractual obligations to St. Jude and they knew Joe was prepared to let the business go with Annette to Medtronic for the right price, an obvious breach of his contract. Despite knowing of Joe's term-of-years contract and Medtronic's company policy, Medtronic personnel continue to allow Joe to take part in Annette's contract negotiations.

*Arbitrator's Final Award*, ***In the Matter of the Arbitration Between St. Jude Medical, S.C., Inc. v. Medtronic USA, Inc***. Significantly, these acts occurred while Annette was still employed by St. Jude.

At argument, St. Jude asserted it was seeking damages only for Annette's acts as a St. Jude, not a Medtronic, employee. The allegations in Count 5 (Civil Conspiracy) specifically encompass Annette's acts before she became a Medtronic employee.[1] Otherwise, the complaint does not clearly indicate which counts are

---

[1]Count 5 alleges that "Mrs. Cormier combined and otherwise conspired with Mr. Cormier and Medtronic, both *before* and after *Medtronic hired Mrs. Cormier*, to engage in repeated and continuing breaches of Mr. Cormier's legal duties to St. Jude

based on Annette's acts as a St. Jude employee. However, in its brief, St. Jude asserts that Count 3 (Tortious Interference with Contractual Relationship) also "encompasses conduct that Mrs. Cormier engaged in while she was still employed by St. Jude and conspiratorial activity with her husband of which Medtronic was not necessarily a part." Similarly at argument, St. Jude stated that Count 1 (Unjust Enrichment) and Count 6 (Breach of Fiduciary Duties) are based on Annette's acts as a St. Jude employee. Although the complaint does not make clear this distinction—likely influencing the district court's finding—this court grants all reasonable inferences in St. Jude's favor. *See **Minch Family***, 628 F.3d at 965. To the extent Counts 1, 3, 5, and 6 arise from Annette's acts as a St. Jude employee, there is no privity and no "identity of the parties."

B.

"Identity of the quality in the person for or against whom the claim is made" refers to the parties' legal capacities. *See, e.g.*, ***O'Brien v. McMahon***, 44 So. 3d 1273, 1279 n.9 (Fla. Dist. Ct. App. 2010) ("The doctrine of res judicata does not, for example, bar subsequent suit by the same person when the plaintiff brings the later suit in a different legal capacity."). Annette claims this element is satisfied by the existence of privity. *See **ICC***, 640 So. 2d at 93.

Like "identity of the parties," there is no "identity of capacity" for St. Jude's claims against Annette for acts before her Medtronic employment. For these claims, Annette is sued in her capacity as a St. Jude employee, liable for any breach of contractual and fiduciary duties owed to St. Jude. To the extent Counts 1, 3, 5, and 6 arise from Annette's acts as a St. Jude employee, there is no "identity of capacity."

---

in exchange for unjust monetary benefits that Medtronic committed to pay to her and her husband, which were paid, which are being paid, and which will be paid in the future, as a result of guaranteed obligations for the benefit of Mr. Cormier, Mrs. Cormier and the Cormier household" (emphasis added).

## C.

For "identity of the cause of action," the "facts or evidence necessary to maintain the suit" must be the same in both actions. *Tyson*, 890 So. 2d at 1205, *quoting Albrecht v. State*, 444 So. 2d 8, 12 (Fla. 1984), *superseded by statute on other grounds*, *Bowen v. Florida Dep't of Envtl. Regulation*, 448 So. 2d 566 (Fla. Dist. Ct. App. 1984); *Variety Children's Hosp. v. Mount Sinai Hosp. of Greater Miami, Inc.*, 448 So. 2d 546, 547 (Fla. Dist. Ct. App. 1984) ("In Florida, the test for deciding whether there is identity of causes of action rests upon a comparison of the facts constituting the underlying transaction."). St. Jude's claims against Annette rely on the same facts and evidence as its claims against Medtronic. The district court did not err in finding "identity of the cause of action."

## D.

Annette contends there is "identity of the thing sued for" because St. Jude sought monetary damages here and in arbitration. *See Heney v. Windsor Corp.*, 777 F. Supp. 1575, 1577 (Fla. Cir. Ct. 1991) ("Plaintiffs sought the same relief in both the state court action and this case—damages."), *citing Valdes v. Ruas*, 354 So. 2d 1269 (Fla. Dist. Ct. App. 1978). Because St. Jude did not contest this requirement in district court, it is precluded from doing so here. *See, e.g.*, *Aaron v. Target Corp.*, 357 F.3d 768, 779 (8th Cir. 2004).

## IV.

Annette also argues that St. Jude's claims are barred by collateral estoppel. The district court stated in a footnote that collateral estoppel "likely" applied because "St. Jude is seeking to recover additional damages based on the same facts alleged in the Florida Arbitration." However, the district court did not decide the issue, and this court declines to consider it.

-8-

\* \* \* \* \* \* \*

The portions of Counts 1, 3, 5, and 6 arising from Annette's acts as a St. Jude employee are not barred by res judicata. The district court's dismissal of these counts is reversed. The district court's dismissal of Counts 2 and 4 is affirmed. The case is remanded for proceedings consistent with this opinion.

_____