# United States Court of Appeals
## For the Eighth Circuit

_____

No. 19-3769
_____

Daredevil, Inc., a Missouri Corporation

*Plaintiff - Appellant*

v.

ZTE Corporation, a corporation incorporated under the laws of the People's
Republic of China

*Defendant - Appellee*

_____

Appeal from United States District Court
for the Eastern District of Missouri - St. Louis

_____

Submitted: January 14, 2021
Filed: June 18, 2021

_____

Before SMITH, Chief Judge, KELLY and ERICKSON, Circuit Judges.

_____

SMITH, Chief Judge.

Daredevil, Inc. ("Daredevil") sued ZTE USA for breach of contract, fraud, and unjust enrichment. The case went to arbitration in Florida. Daredevil then sought to add ZTE Corporation ("ZTE Corp."), the parent company of ZTE USA, to its arbitration claims. The arbitrator rejected the request to add ZTE Corp., ruling that Daredevil's claims against ZTE Corp. were outside the scope of arbitration because

Daredevil had not sued ZTE Corp. at the time arbitration began. Daredevil then filed this suit against ZTE Corp., alleging breach of contract, fraud, unjust enrichment, and tortious interference with contract. This case was stayed pending the arbitration with ZTE USA.

The arbitrator ultimately denied each of Daredevil's claims against ZTE USA. The arbitration award was confirmed by the United States District Court for the Middle District of Florida and affirmed by the Eleventh Circuit Court of Appeals.

Daredevil subsequently reopened this case in the Eastern District of Missouri against ZTE Corp. ZTE Corp. moved for summary judgment on the grounds that Daredevil's claims were precluded by the arbitration award and confirmation. The district court[1] agreed; applying Florida law, it held that Daredevil's claims met the requirements for claim preclusion and were therefore barred. We affirm.

## I. *Background*

Seeking to develop a cellphone network in St. Louis, Missouri, Daredevil contracted with ZTE Corp. and ZTE USA. ZTE Corp. is a Chinese technology firm that manufactures and sells telecommunications infrastructure and cellular-network equipment and handsets; ZTE USA is a wholly owned subsidiary of ZTE Corp., based in New Jersey. In September 2008, two representatives of ZTE USA—Neil Kushner and Joey Jia—met with Eric Steinmann, Daredevil's owner, in California. After their discussions, the parties entered a contract now referred to as the "Missouri MSA." The Missouri MSA provided the terms for establishing Daredevil's St. Louis cellphone network. It consisted of (1) a five-page "Agreement" and (2) a standardized "Master Supply Agreement" (MSA). The Agreement notes that "the terms of the attached [MSA] will apply." Compl., Ex. A, at 1, *Daredevil, Inc. v. ZTE Corp.*, No.

---

[1]The Honorable Rodney W. Sippel, Chief Judge, United States District Court for the Eastern District of Missouri.

4:12-cv-01166-RWS (E.D. Mo. 2019), ECF No. 1-1. It concludes with: "Additional terms as included. If there is any conflict this initial five[-]page agreement will take precedence." *Id.* at 5. The Agreement consistently refers to "ZTE" and says "ZTE Inc." under the signature block, *see id.* at 1, 5, and the MSA refers to "ZTE USA, Inc." and says "ZTE USA, Inc." under the signature block. *See* Compl., Ex. B, at 1, 15, *Daredevil, Inc. v. ZTE Corp.*, No. 4:12-cv-01166-RWS (E.D. Mo. 2019), ECF No. 1-2. Jia signed both the Agreement and the MSA.

Over time, the parties' business relationship broke down. On May 4, 2011, Daredevil sued ZTE USA in the Eastern District of Missouri for breach of contract, rescission, and unjust enrichment. Around the same time, several of Daredevil's affiliates—also owned and controlled by Eric Steinmann and referred to collectively as "ClearTalk"—sued ZTE USA in other jurisdictions.[2] Steinmann individually sued both ZTE USA and ZTE Corp. in California. Later that year, several of these cases were compelled to arbitration based on an arbitration provision in the MSA. Daredevil stipulated to a consolidated arbitration in Jacksonville, Florida. Then, the ClearTalk entities—including Daredevil—and Steinmann were joined in a unified arbitration proceeding against ZTE USA. Because Steinmann's suit was the only one to name ZTE Corp. as a defendant, ZTE Corp. stipulated to the arbitration only as it applied to Steinmann's claims.

ClearTalk soon filed an amended statement of claim in arbitration, in which each ClearTalk entity asserted claims against ZTE USA *and* ZTE Corp. Not surprisingly, ZTE Corp. objected to being included in these new arbitration claims because it had only agreed to arbitrate Steinmann's claims, not ClearTalk's. The arbitrator agreed with ZTE Corp. and ruled that "the scope of the arbitration will be

---

[2]PTA-FLA, Inc. sued ZTE USA in Florida and South Carolina; NTCH-West Tenn., Inc. sued ZTE USA in Tennessee; and NTCH-WA sued ZTE USA in Washington.

all the claims, counterclaims, and defenses that exist or may arise between and among the parties subject to the jurisdiction of the courts in the lawsuits pending at the time of the agreement to arbitrate." Def.'s Decl. Supp. Mot. Summ. J., Ex. 1, at 2, *Daredevil, Inc. v. ZTE Corp.*, No. 4:12-cv-01166-RWS (E.D. Mo. 2019), ECF No. 78-1. The arbitration was thus confined to ClearTalk's claims against ZTE USA and Steinmann's claims against ZTE USA and ZTE Corp.

After the arbitrator determined that ClearTalk (and, as a result, Daredevil) could not proceed against ZTE Corp. in arbitration, Daredevil filed this action against ZTE Corp. in the Eastern District of Missouri. Daredevil's first amended complaint ("Complaint"), filed in August 2012, alleged breach of contract, fraud, unjust enrichment, and tortious interference with contract. The Complaint was nearly identical to Daredevil's claims in ClearTalk's final statement of claim in arbitration ("Arbitration Statement"), where Daredevil alleged breach of contract, fraud, and unjust enrichment against ZTE USA. The only notable difference was that the Complaint added a claim for tortious interference with contract and referred only to "ZTE Corp." in places where the Arbitration Statement had referred to both "ZTE Corp. and ZTE USA."

ZTE Corp. moved for a stay of this case pending arbitration. In April 2013, the district court granted the motion after finding that "[t]he virtually identical facts and issues in the case against ZTE Corporation and the pending arbitration between Daredevil and ZTE USA warrant a stay of the present litigation." *Daredevil, Inc. v. ZTE Corp.*, No. 4:12-cv-01166-TIA, 2013 WL 1342363, at *2 (E.D. Mo. Apr. 3, 2013).

The arbitration hearing began in August 2013. It included ten days of live testimony from about 30 witnesses and hundreds of exhibits. Steinmann, Kushner, and Jia testified. The arbitrator's final decision ("Final Award"), issued in February 2014, rejected all of ClearTalk's claims. The arbitrator ruled that "[t]he ClearTalk

-4-

entities shall take nothing from this action and the Respondents, namely ZTE [Corp.], a company incorporated under the laws of the People's Republic of China and ZTE (USA), Inc., a New Jersey corporation owe nothing in regard to those claims." Def.'s Decl. Supp. Mot. Summ. J., Ex. 7, at 18, *Daredevil, Inc. v. ZTE Corp.*, No. 4:12-cv-01166-RWS (E.D. Mo. 2019), ECF No. 78-7. The Final Award addressed the Missouri-specific claims and evidence, including details about the "St. Louis, Missouri network" and "considerable testimony about the circumstances surrounding the execution of the Missouri MSA." *Id.* at 14. It concluded that the award was "in full settlement of all claims submitted to this arbitration." *Id.* at 18. The Middle District of Florida confirmed the arbitration award in October 2015, and the Eleventh Circuit affirmed the confirmation in December 2016.

Following the Final Award, Daredevil sought to reopen this case in November 2018, and the district court lifted the stay. ZTE Corp. moved for summary judgment, arguing that Daredevil's claims were precluded by the arbitration award and confirmation. The district court granted summary judgment to ZTE Corp. after determining that Florida law applies and that, under Florida's claim-preclusion law, Daredevil is barred from bringing its claims against ZTE Corp. Daredevil timely appealed.

## II. *Discussion*

Daredevil makes two arguments on appeal. First, it argues that the district court erred when it applied Florida law, rather than Missouri law, to the question of claim preclusion. Second, it argues that its claims against ZTE Corp. are not barred under Florida law because the parties and the causes of action do not meet Florida law's requirement of "identity."

We review a grant of summary judgment de novo, viewing the evidence in the light most favorable to the nonmoving party. *Austin v. Super Valu Stores, Inc.*, 31 F.3d 615, 617 (8th Cir. 1994). Summary judgment is proper if there is no genuine

dispute of material fact, and the burden is on the nonmoving party "to designate specific facts creating a triable controversy." *Crossley v. Georgia-Pac. Corp.*, 355 F.3d 1112, 1113 (8th Cir. 2004) (per curiam) (quoting *Jaurequi v. Carter Mfg. Co.*, 173 F.3d 1076, 1085 (8th Cir. 1999)).

## A. *Applicable State Law*

First, we must determine which law applies to the claim-preclusion analysis. "[F]ederal common law governs the claim-preclusive effect of" a judgment rendered "by a federal court sitting in diversity." *Semtek Int'l Inc. v. Lockheed Martin Corp.*, 531 U.S. 497, 508 (2001). It is well-settled in our circuit that "[t]he law of the forum that rendered the first judgment controls the *res judicata* analysis." *St. Jude Med. S.C., Inc. v. Cormier*, 745 F.3d 325, 327 (8th Cir. 2014) (quoting *St. Paul Fire & Marine Ins. Co. v. Compaq Comput. Corp.*, 539 F.3d 809, 821 (8th Cir. 2008)). Thus, when a federal court, exercising diversity jurisdiction, renders the first judgment, then "[a]s a matter of federal common law, we must give that federal diversity judgment the same claim-preclusive effect that [the forum's] state courts would give to a state court judgment." *C.H. Robinson Worldwide, Inc. v. Lobrano*, 695 F.3d 758, 764 (8th Cir. 2012) (applying Louisiana law to determine the preclusive effect of the judgment of a Louisiana federal district court sitting in diversity); *see also PPW Royalty Tr. by & through Petrie v. Barton*, 841 F.3d 746, 754 (8th Cir. 2016) (applying Kentucky law to determine the preclusive effect of the judgment of a Kentucky federal district court sitting in diversity).

Florida law applies. The arbitration award was granted in Florida and confirmed by a federal district court, sitting in diversity, in Florida. Under the Federal Arbitration Act, when a district court confirms an arbitration award, that "judgment . . . shall have the same force and effect, in all respects, as . . . a judgment in an action; and it may be enforced as if it had been rendered in an action in the court in which it is entered." 9 U.S.C. § 13. The Florida district court's decision was a final judgment

on the merits and, accordingly, the law of that forum—Florida law, not Missouri law—governs our claim-preclusion analysis.[3]

## B. *Claim Preclusion*

We next address whether Florida law precludes Daredevil from bringing its claims against ZTE Corp. in this action. "Under the doctrine of claim preclusion, a final judgment forecloses 'successive litigation of the very same claim, whether or not relitigation of the claim raises the same issues as the earlier suit.'" *Taylor v. Sturgell*, 553 U.S. 880, 892 (2008) (quoting *New Hampshire v. Maine*, 532 U.S. 742, 748 (2001)). In Florida, arbitration awards confirmed by a federal district court are final judgments with claim-preclusive effect. *See ICC Chem. Corp. v. Freeman*, 640 So. 2d 92, 93 (Fla. Dist. Ct. App. 1994) (per curiam).

Florida has four requirements for claim preclusion to apply: "(1) identity of the parties, (2) identity of the quality in the person for or against whom the claim is made, (3) identity of the cause of action, and (4) identity of the thing sued for." *St. Jude*, 745 F.3d at 327 (citing *Dadeland Depot, Inc. v. St. Paul Fire & Marine Ins. Co.*, 945 So. 2d 1216, 1235 (Fla. 2006)). According to Daredevil, the district court erred in concluding that Daredevil's claims meet the first and third requirements—identity of the parties and identity of the cause of action. It does not dispute the other two requirements.

---

[3]We note that Florida law would apply even if the federal district court in Florida had not confirmed the arbitration award. In *St. Jude*, we applied Florida law because "Florida was the forum that rendered the arbitration judgment." 745 F.3d at 327. Here, too, Florida rendered the arbitration judgment. Daredevil seeks to distinguish *St. Jude* by arguing that it never initiated state or federal court proceedings in Florida. This argument has no merit. Daredevil cites no case law to support its proposition that we should apply the law of the first forum only in situations where the plaintiff actually initiated proceedings in that forum. Moreover, Daredevil stipulated to arbitration proceedings in Florida.

### 1. *Identity of the Parties*

Daredevil argues that there is no identity of the parties. "For this requirement, Florida includes the parties' privies." *Id.* at 328. Whether ZTE USA and ZTE Corp. are in privity with one another is a question of fact to be determined on a case-by-case basis. *See id.* "A privy is one who is identified with the litigant in interest." *Beepot v. J.P. Morgan Chase Nat'l Corp. Servs., Inc.*, 57 F. Supp. 3d 1358, 1371 (M.D. Fla. 2014) (quotation and citation omitted). "To be in privity with a party to an earlier lawsuit, 'one must have an interest in the action such that she will be bound by the final judgment as if she were a party.'" *Provident Funding Assocs., L.P. v. MDTR*, 257 So. 3d 1114, 1118 (Fla. Dist. Ct. App. 2018) (quoting *Pearce v. Sandler*, 219 So. 3d 961, 965 (Fla. Dist. Ct. App. 2017)). In Florida, a parent-subsidiary relationship can establish privity. *Jenkins v. Lennar Corp.*, 972 So. 2d 1064, 1066 (Fla. Dist. Ct. App. 2008) ("Because Universal is a subsidiary of Lennar, they are privies, and thus, the parties to each of the previous lawsuits are identical."); *see also Beepot*, 57 F. Supp. 3d at 1371 (finding the parties to be in privity where one was a wholly owned subsidiary of the other and they had the same interests in each case).

ZTE USA is a wholly owned subsidiary of ZTE Corp. Daredevil acknowledges this, but it contends that this relationship is insufficient to establish privity because ZTE Corp. is liable for independent wrongdoing. We disagree.

Daredevil's own pleadings undermine its argument. Daredevil has consistently described the duties and alleged violations of ZTE USA and ZTE Corp. using virtually identical language throughout the arbitration and this case. For example, in the Arbitration Statement, Daredevil repeatedly named ZTE Corp. along with ZTE USA—even *after* the arbitrator had limited the scope of arbitration to its claims against ZTE USA. Daredevil's Complaint in this case makes nearly identical allegations, but it replaces the name "ZTE USA" with "ZTE Corp." in most places. Where the Complaint does refer to both companies, it nonetheless references the acts of the same individuals—for example, Daredevil describes the representatives who

came to Steinmann's house, Kushner and Jia, as being "primarily responsible for ZTE Corp. and ZTE USA's efforts in courting Daredevil's business." Am. Compl., ¶ 11, *Daredevil, Inc. v. ZTE Corp.*, No. 4:12-cv-01166-RWS (E.D. Mo. 2019), ECF No. 6. In other words, it describes the two companies' representatives, "efforts," and actions as one.

Moreover, we are persuaded by our sister circuit's decision in *NTCH-WA, Inc. v. ZTE Corp.*, 921 F.3d 1175 (9th Cir. 2019), a related case brought by ClearTalk entity NTCH-WA against ZTE Corp. The Ninth Circuit addressed whether NTCH-WA's claim against ZTE Corp. was precluded by the same arbitration at issue here. It explained that "Florida treats parent corporations and subsidiaries as privies for purposes of preclusion" and, therefore, concluded that "privity exists between ZTE Corp. and ZTE USA, ZTE Corp.'s wholly-owned U.S. subsidiary." *Id.* at 1183. We agree with the Ninth Circuit that ZTE USA and ZTE Corp. are privies. Accordingly, we conclude that ZTE Corp. has met Florida's identity-of-the-parties requirement. *See St. Jude*, 745 F.3d at 327.

### 2. *Identity of the Cause of Action*

Daredevil also argues that there is no identity of the cause of action. "[I]f there is no common identity of the cause of action, the defense of [claim preclusion] will be unsuccessful." *U.S. Project Mgmt., Inc. v. Parc Royale E. Dev., Inc.*, 861 So. 2d 74, 76 (Fla. Dist. Ct. App. 2003); *see also Fla. Bar v. St. Louis*, 967 So. 2d 108, 119 (Fla. 2007) ("[C]auses of action must be closely related for the doctrine of res judicata to apply."). "The determining factor in deciding whether the cause of action is the same is whether the facts or evidence necessary to maintain the suit are the same in both actions." *Albrecht v. State*, 444 So. 2d 8, 12 (Fla. 1984), *superseded by statute on other grounds as recognized in Holder v. Keller Kitchen Cabinets*, 610 So. 2d 1264, 1267 (Fla. 1992).

Daredevil acknowledges that it makes "similar claims" in this lawsuit, but it contends that the facts and evidence are different. Appellant's Br. at 32. Specifically, it argues that (1) this claim and the arbitration claim involve different underlying contracts and (2) even if the contracts are the same, there is no identity of the cause of action because ZTE Corp. had a "separate set of duties and requirements" from ZTE USA. *Id.* at 34. We reject both of these arguments.

First, we find that the contracts in the arbitration claim and this lawsuit are the same: both involved the Agreement and the attached MSA, which together make up the Missouri MSA. Under Missouri contract law, "[i]t is well established that when several instruments relating to the same subject are executed at the same time, 'the documents will be construed together, even in the absence of explicit incorporation, unless the realities of the situation indicate that the parties did not so intend.'" *Ditto, Inc. v. Davids*, 457 S.W.3d 1, 12 (Mo. Ct. App. 2014) (quoting *Johnson ex rel. Johnson v. JF Enters., LLC*, 400 S.W.3d 763, 767 (Mo. 2013) (en banc)).

Daredevil seeks to limit the arbitration to involve only the MSA—not the Agreement—in the hopes of establishing that ZTE Corp. was party *only* to the Agreement. The record does not support such a limitation. For example, the ClearTalk entities treated the two documents as one contract in their Arbitration Statement:

> [A]fter a series of negotiations, Daredevil, ZTE Corp. and ZTE USA executed an agreement specifying certain terms governing the purchase of equipment and cooperation between the parties ("Missouri Agreement"). The Missouri Agreement was executed by both ZTE Corp. and ZTE USA. The Missouri Agreement *incorporated another "Master Supply Agreement" by reference* (the "Missouri MSA"). A true and correct copy of the Missouri Agreement is attached hereto as Exhibit "D."

-10-

Def.'s Decl. Supp. Mot. Summ. J., Ex. 2, ¶ 80, *Daredevil, Inc. v. ZTE Corp.*, No. 4:12-cv-01166-RWS (E.D. Mo. 2019), ECF No. 78-2 (emphasis added). Exhibit D contained both the Agreement and the MSA. Then, during the arbitration's closing argument, counsel for ClearTalk said the Agreement and MSA "were all done together. Everybody testified to that. And it was all to be interpreted as one integrated document." Def.'s Decl. Supp. Mot. Summ. J., Ex. 5, at 62:3–5, *Daredevil, Inc. v. ZTE Corp.*, No. 4:12-cv-01166-RWS (E.D. Mo. 2019), ECF No. 78-5. The arbitrator, too, treated both as a single document; the Final Award referred to the contract as the "Missouri MSA" and defined that term with reference to exhibits containing both documents. Def.'s Decl. Supp. Mot. Summ. J., Ex. 7, at 4. Because the MSA was incorporated into the Missouri Agreement by reference and the parties treated them as one contract during arbitration, we also treat them as one.

Second, ZTE Corp.'s duties and obligations—as alleged in this case—did not differ meaningfully from those of ZTE USA. In fact, Daredevil repeatedly referred to both companies in the Arbitration Statement even though the arbitrator had specifically limited Daredevil's claims to claims against ZTE USA. Daredevil named *both* companies when describing the parties' agreements and duties. *See e.g.*, Def.'s Decl. Supp. Mot. Summ. J., Ex. 2, ¶¶ 88–90 ("ZTE Corp. and ZTE USA failed to timely deliver the Missouri Equipment"; "ZTE Corp. and ZTE USA knew or should have known that it could not timely deliver the Missouri Equipment to Daredevil"; "ZTE Corp. and ZTE USA decided that it would deliver those portions of the Missouri Equipment to another customer of ZTE Corp. and ZTE USA"). It also named both companies when describing ZTE USA's alleged violations. *See e.g.*, *id.* at ¶¶ 82–84 ("Daredevil, ZTE Corp. and ZTE USA agreed that the St. Louis network would include 179 base stations"; "Daredevil agreed to pay ZTE Corp. and ZTE USA a down payment of $2,600,000"; "ZTE Corp. and ZTE USA agreed to deliver the Missouri Equipment to St. Louis").

Daredevil's allegations against ZTE Corp. in this suit are nearly identical to those it made against ZTE USA during arbitration. A side-by-side comparison of some of the legal claims speaks for itself:

| | |
|---|---|
| 225. *ZTE USA* breached the Missouri Agreement by failing to timely deliver the Missouri Equipment. | 40. *ZTE Corp.* breached the Missouri Agreement by failing to timely deliver the Missouri Equipment. |
| 226. *ZTE USA* further breached the Missouri Agreement by repudiating its terms when *ZTE USA* refused to deliver the Missouri Equipment to Daredevil, and instead delivered the equipment to another customer. . . . | 41. *ZTE Corp.* further breached the Missouri Agreement by repudiating its terms when *ZTE Corp.* refused to deliver the Missouri Equipment to Daredevil, and instead delivered the equipment to another customer. . . . |
| 237. It was foreseeable that Daredevil would rely on *Jia*'s misrepresentations. | 52. It was foreseeable that Daredevil would rely on *ZTE Corp.*'s misrepresentations. |
| 238. Daredevil's reliance on *ZTE USA*'s representations was reasonable. | 53. Daredevil's reliance on *ZTE Corp.*'s representations was reasonable. |
| 239. As a result of Daredevil's reliance on *ZTE USA*'s misrepresentations, Daredevil has been damaged. . . . | 54. As a result of Daredevil's reliance on *ZTE Corp.*'s misrepresentations, Daredevil has been damaged. . . . |
| 242. Pleading in the alternative, plaintiff seeks recovery against *ZTE USA* for unjust enrichment. | 57. Pleading in the alternative, plaintiff seeks recovery against *ZTE Corp.* for unjust enrichment. |
| 243. Daredevil paid in excess of $2.6 Million to *ZTE USA* in connection with the Missouri Agreement.[4] | 58. Daredevil paid in excess of $2,600,000 to *ZTE USA and/or ZTE Corp.* in connection with the Missouri Agreement.[5] |

---

[4]Def.'s Decl. Supp. Mot. Summ. J., Ex. 2, ¶¶ 225–26, 237–39, 242–43 (emphases added).

[5]Am. Compl., ¶¶ 40–41, 52–54, 57–58 (emphases added).

These are just a few examples. Throughout the Complaint, Daredevil uses the same language used in the arbitration, except that it uses the name "ZTE Corp." instead of "ZTE USA." The district court succinctly summarized the similarities between Daredevil's arbitration claims against ZTE USA and its present claims against ZTE Corp and concluded that "[t]he main difference is that the [Arbitration Statement] references 'ZTE Corp. and ZTE USA,' while the [Complaint] refers to 'ZTE Corp.' alone. This is not sufficient to distinguish these causes of action." *Daredevil, Inc. v. ZTE Corp.*, No. 4:12-cv-01166-RWS, 2019 WL 6324538, at *5 (E.D. Mo. Nov. 26, 2019) (citation omitted).

Viewing the record in the light most favorable to Daredevil, Daredevil fails to show that "the evidence necessary to maintain [its arbitration claims] is different from the evidence needed in the current suit." *Project Mgmt.*, 861 So. 2d at 77. This is true regardless of the additional claim for tortious interference.[6] The underlying contracts, facts, and named individuals are the same. Kushner's and Jia's arbitration depositions show that both suits rely on the same evidence from the same witnesses. Steinmann, Daredevil's representative, also testified during arbitration. Because Daredevil's current claims are so closely related to its arbitration claims, we conclude that the identity-of-cause-of-action requirement has been met. *See St. Jude*, 745 F.3d at 327.

## III. *Conclusion*

In sum, the district court correctly concluded that claim preclusion applies here. Daredevil's current and previous claims share identity of the parties and identity of the cause of action, and Daredevil does not dispute that Florida's other two

---

[6]We note, as the district court did, that Daredevil's claim for tortious interference with contract is negated by the arbitrator's determination that there was no breach of contract in the first place.

-13-

requirements are satisfied. Accordingly, Daredevil's claims against ZTE Corp. are barred by the decision in its prior arbitration against ZTE USA.

For the foregoing reasons, we affirm the district court's decision.

_____