HAZOURI, J.
 

 The Appellant, Margaret Liebel, f/k/a Margaret Kennedy, appeals a final judgment whereby the trial court found, by way of summary judgment, that an all-risk insurance policy of the Appellee, Nationwide Insurance Company of Florida (hereinafter commonly referred to as “the Policy”), covered a loss to Liebel’s home caused by a ruptured water line beneath it, but that the loss was excepted from coverage by the policy’s earth movement exclusion. On appeal, Liebel contests the propriety of that finding, alleging that: (1) the Policy covers her loss, (2) the loss is not excepted from coverage under the earth movement exception, and (3) the trial court erred by not finding that the cost of repairing the water line, i.e., a plumbing system, was covered by the Policy. Although we agree that if the loss were only related to earth movement, it would be excluded by the earth movement exception, we find that the trial court erred in concluding the earth movement exception specifically excluded coverage for the cost of tearing out and replacing any part of the house necessary to repair the ruptured water line.
 

 On or about February 14, 2003, Liebel, while moving a couch in her living room, discovered a wide gap between the floor
 
 *113
 
 and the wall. Between February 14, 2003 and March 4, 2003, Liebel’s living room floor began to intensely sag and bend. Then, every room of the home became separated from the walls. A wide crack also formed in the middle of the living room. This crack was caused by the rupturing of a water line beneath Liebel’s home. The escaping water caused the soil beneath the home to erode, which in turn caused the foundation to settle, which in turn caused the damage to Liebel’s home.
 

 Prior to this incident, Liebel purchased homeowner’s insurance from Nationwide. The Policy was an “all-risk” policy. This means that “[u]nless the policy expressly excludes the loss from coverage, this type of policy provides coverage for all fortuitous loss or damage other than that resulting from willful misconduct or fraudulent acts.”
 
 Fayad v. Clarendon Nat. Ins. Co.,
 
 899 So.2d 1082, 1085 (Fla.2005).
 

 Liebel notified Nationwide and sought coverage under the Policy. On March 25, 2003, and April 1, 2003, Nationwide had Liebel’s home inspected by an engineer. Based on the information obtained from the inspections, Nationwide denied coverage for the loss to Liebel’s home. It stated that the loss to Liebel’s home was specifically excluded under the Policy. The applicable exclusions are as follows:
 

 1. We do not cover loss to any property resulting directly or indirectly from any of the following. Such a loss is excluded even if another cause or event contributed concurrently or in any sequence to cause the loss,
 

 a) Earth Movement and Volcanic Eruption. Earth movement means: earth movement due to natural or
 
 unnatural
 
 causes, including mine subsidence; earthquake; landslide; mudslide; earth shifting, rising or sinking (other than sinkhole collapse). Volcanic eruption means: eruption; or discharge from a volcano.
 

 [[Image here]]
 

 3. We do not cover loss to property described in Coverages A and B resulting directly from any of the following:
 

 [[Image here]]
 

 e) Continuous or repeated seepage or leakage of water or steam over a period of time from a heating, air conditioning or automatic fire protective sprinkler system; household appliance; or plumbing system that results in deterioration, rust, mold, or wet or dry rote [sic]. Seepage or leakage from, within, or around any shower stall, shower tub, tub installation or other plumbing fixture, including their walls, ceilings or floors, is also excluded.
 

 If loss caused by water or steam is not otherwise excluded, we will cover the cost of tearing out and replacing any part of the building necessary to repair or replace the system or appliance. We do not cover loss to the system or appliance from which the water or steam escaped.
 

 f) (1)
 
 wear and tear, marring, deterioration;
 

 (2) inherent vice, latent defect, mechanical breakdown;
 

 (3) smog, rust, mold, wet or dry rot;
 

 (4) smoke from agricultural smudging or industrial operations;
 

 (5) release, discharge, or dispersal of contaminants or pollutants;
 

 (6) settling, cracking, shrinking, bulging or expansion of pavements, patios, foundations, walls, floors, roofs or ceilings; or
 

 
 *114
 
 (7) birds, vermin, rodents, insects or domestic animals. Resulting breakage of glass constituting part of a covered building is covered.
 

 If any items f)(l) through (7) cause water to escape from a plumbing, heating, air conditioning or automatic fire protective sprinkler system or household appliance, we cover loss caused by the water not otherwise excluded. We also cover the cost of tearing out and replacing any pari of a building necessary to repair the system or appliance.
 
 We do not cover loss to the system or appliance from which the water escaped.
 

 Under exclusions 3.a) through 3.f), any loss that follows is covered unless it is specifically excluded.
 

 (emphasis added).
 

 Liebel filed suit for breach of insurance contract, alleging that Nationwide failed to pay her for all of the losses she sustained as provided for in the Policy. Nationwide answered, citing as affirmative defenses the exclusion provisions stated above. This was followed by Liebel’s Motion for Summary Judgment, where she alleged that the facts were undisputed and, as a matter of law, she was entitled to judgment in her favor because the loss to her home fell within an area that the Policy covers and it was not otherwise exempt from coverage via one of the Policy’s exclusions. Nationwide filed a cross-motion for summary judgment. In it, Nationwide conceded that the facts are undisputed and argued that, as a matter of law, it was entitled to judgment because the loss sustained by Liebel was excluded from coverage by way of the Policy’s exclusions. Lie-bel filed a second motion for summary judgment. In that motion, she argued that her loss was covered by the Policy because the Policy states: “We also cover the cost of tearing out and replacing any part of a building necessary to repair the system or appliance.” Liebel contended that this statement encompassed coverage for repairs to plumbing systems, such as her water line.
 

 After a hearing on these motions, the trial court rendered an order whereby it denied Liebel’s Motion for Summary Judgment, granted Nationwide’s Cross-Motion for Summary Judgment, and denied Lie-bel’s Second Motion for Summary Judgment. It then entered a final judgment in favor of Nationwide, finding that the Policy’s earth movement exclusion operated to deny coverage for Liebel’s loss because it specifically includes natural and unnatural causes and defined earth movement to include “earth shifting” and “rising and sinking.” The trial court reasoned that the damage to Liebel’s home fit within this exclusion because it was caused by earth shifting that was generated from an unnatural cause, i.e., the rupturing of the water line beneath Liebel’s home. The trial court considered whether section (3)(f) of the policy covered the cost of repairing the ruptured water line underneath Liebel’s home, as that section of the Policy covered those costs of repairing a plumbing system that has deteriorated from wear and tear. However, it held that this provision does not cover the cost of repairing the plumbing system because, in accordance with section (3)(f)’s language, such coverage is available if “not otherwise excluded,” the loss was otherwise excluded via the earth movement exclusion.
 

 We review this appeal under the de novo standard of review, as “[a]n appellate court reviews de novo the propriety of the grant of summary judgment.”
 
 State Farm Mut. Auto. Ins. Co. v. Colon,
 
 880 So.2d 782, 783 (Fla. 2d DCA 2004). De novo review is also proper because “[t]he construction of an insurance policy is a question of law for the court and is subject
 
 *115
 
 to de novo review.”
 
 Flaxman v. Gov’t Employees Ins. Co.,
 
 993 So.2d 597, 599 (Fla. 4th DCA 2008).
 

 The type of policy at issue here is an all-risk policy. “Unless the policy expressly excludes the loss from coverage, this type of policy provides coverage for all fortuitous loss or damage other than that resulting from willful misconduct or fraudulent acts.”
 
 See Fayad,
 
 899 So.2d at 1085. However, “[although the term ‘all-risk’ is afforded a broad, comprehensive meaning, an ‘all-risk’ policy is not an ‘all loss’ policy, and thus does not extend coverage for every conceivable loss.”
 
 Id.
 
 at 1086 (citing
 
 Wallach v. Rosenberg,
 
 527 So.2d 1386, 1388 (Fla. 3d DCA 1988)). But, under an all-risk policy, an exclusion applies if the loss clearly and unambiguously fits within its provisions.
 
 See id.
 
 at 1090 (stating that “[i]f [the insurer] intended to exclude damage from earth movement caused by man-made events from coverage as it now contends, it could have done so clearly and unambiguously”).
 

 In order to decide “whether an all-risk policy excludes coverage for an insured’s claimed damages,” courts are “guided by well-established principles of insurance contract interpretation.”
 
 Id.
 
 at 1086. The “guiding principle” of insurance contract interpretation is “that insurance contracts are construed in accordance with ‘the plain language of the policfy] as bargained for by the parties.’ ”
 
 Id.
 
 (quoting
 
 Auto-Owners Ins. Co. v. Anderson,
 
 756 So.2d 29, 33 (Fla.2000)). Yet,
 

 if the salient policy language is susceptible to two reasonable interpretations, one providing coverage and the other excluding coverage, the policy is considered ambiguous. Ambiguous coverage provisions are construed strictly against the insurer that drafted the policy and liberally in favor of the insured. Further, ambiguous “exclusionary clauses are construed even more strictly against the insurer than coverage clauses.” Thus, the insurer is held responsible for clearly setting forth what damages are excluded from coverage under the terms of the policy.
 

 Id.
 
 (quoting
 
 Anderson,
 
 756 So.2d at 34) (citations omitted). However, “ ‘the rule of liberal construction in favor of the insured applies only when a genuine inconsistency, uncertainty, or ambiguity in meaning remains after resort to the ordinary rules of construction,’ and the fact that a policy fails to define an operative term does not, by itself, create an ambiguity.”
 
 State Farm Mut. Auto. Ins. Co. v. Fischer,
 
 16 So.3d 1028 (Fla. 2d DCA 2009) (quoting
 
 Gen. Star Indem. Co. v. W. Fla. Vill. Inn, Inc.,
 
 874 So.2d 26, 30 (Fla. 2d DCA 2004)). And “ ‘[w]hen the insurer has not defined a term, the common definition of the term should prevail.’ ”
 
 Id.
 
 (quoting
 
 Auto-Owners Ins. Co. v. Above All Roofing, LLC,
 
 924 So.2d 842, 847 (Fla. 2d DCA 2006)).
 

 In this case, the trial court was correct in holding that the Policy’s earth movement exclusion included the loss to Liebel’s home, as the plain and unambiguous meaning of the Policy and its earth movement exclusion warrant that result. In particular, the Policy’s earth movement exclusion excepts from coverage “loss to any property resulting directly or indirectly” from “earth movement due to natural or
 
 unnatural
 
 causes,” (emphasis added), with earth movement including “earth shifting, rising, or sinking.” The loss to Liebel’s home was caused by the shifting of earth under the home that was, in turn, caused by earth shifting from unnatural causes, i.e., the water line rupturing. The loss was, therefore, specifically excluded from the Policy’s coverage by the earth movement exclusion, even though it was caused by an unnatural force, as the exclu
 
 *116
 
 sion clearly and unambiguously stated that the loss sustained at Liebel’s home fell within it. Because this interpretation is clear on the face of the Policy, the court need not use the other principles of contract interpretation because there is not an ambiguity warranting their application.
 
 See State Farm Fire & Gas. Co. v. Metro. Dade County,
 
 639 So.2d 63, 65 (Fla. 3d DCA 1994) (stating that “‘[a] court may resort to construction of a contract of insurance only when the language of the policy in its ordinary meaning is indefinite, ambiguous or equivocal,’ ” and that “ ‘[i]f the language employed in the policy is clear and unambiguous, there is no occasion for construction or the exercise of a choice of interpretations’ ” (quoting
 
 U.S. Fire Ins. Co. v. Morejon,
 
 338 So.2d 223, 225 (Fla. 3d DCA 1976))).
 

 Liebel’s next contention is that the cost of repairing the water line is covered by the Policy’s provision that says: “We also cover the cost of tearing out and replacing any part of a building necessary to repair the system or appliance.” If the cost of repair does not fall within this provision’s plain meaning, Liebel contends that an ambiguity in the Policy exists regarding her loss because after the Policy’s statement that it does not cover a loss that is “otherwise excluded,” it goes on to give the previously stated cost of repair provision. Liebel argues that this creates an ambiguity because the statement that immediately precedes the cost of repair provision possibly excepts her loss from coverage, while the cost of repair provision may include coverage for the “cost of tearing out and replacing any part of a building necessary to repair [a] system or appliance,” without specifically excluding a plumbing system. Liebel further contends that an ambiguity exists by pointing to the Policy’s subsequent paragraph, which states that “[u]n-der exclusions 3.a) through 3.f), any loss that follows is covered unless it is
 
 specifically excluded,”
 
 (emphasis added), and to the fact that the cost of repair provision does not specifically exclude repair costs caused by damage from earth movement.
 

 In support of her argument, Liebel cites
 
 Hartford Accident & Indemnity Co. v. Phelps,
 
 294 So.2d 362 (Fla. 1st DCA 1974). There, the insured’s home suffered damage resulting from an underground leak in a water line under the house and beneath its concrete slab. The all-risk policy of the insured covered “ ‘accidental discharge, leakage or overflow of water or steam from within a plumbing, heating or air conditioning system,’ ” and it provided that “ ‘[i]f loss by water not otherwise excluded ensues, this policy shall also cover the cost of tearing out and replacing any part of the building covered required to effect repairs to the plumbing, heating, or air conditioning system.’ ”
 
 Id.
 
 at 363. The policy at issue in
 
 Phelps,
 
 however, excluded from coverage damage caused from “ ‘water below the surface of the ground including that which exerts pressure on or flows, seeps or leaks through windows, driveways, foundations, walls, basement or other floors or through doors, windows or any other openings in such sidewalks, driveways, foundations, walls, or floors.’ ”
 
 Id.
 
 Although the insurer argued that the exclusion applied to the loss, the First District held that it did not, stating:
 

 From the previously quoted wording of the policy, we consider that the underground water exclusion does not have reference to leaks within the plumbing system of the house. Having specifically covered plumbing system leaks, the insurer, if it had intended to exclude underground leaks in the plumbing system, would or should have specifically said so....
 

 [[Image here]]
 

 
 *117
 
 When we consider the terminology used in the exclusion clause in pari materia with the affirmative statement of coverage from leaks in the plumbing system, we conclude that the exclusion was intended to relate only to damage from water not emanating from the plumbing system.
 

 Id.
 

 In the instant case, the trial court erred by not holding that the Policy covered the cost of repairing the plumbing system. This is because the Policy, by providing that it does not cover damage caused by water from a plumbing system that is otherwise excluded, but then stating that it covers the cost of repairing a system that caused water damage, has created an ambiguity, as two or more reasonable interpretations of these two intersecting provisions are feasible. Specifically, one may interpret the “otherwise excluded” language to preclude coverage for all damages caused by a matter otherwise excluded, including the cost of tearing out and replacing any part of Liebel’s home necessary to repair the ruptured water line. In contrast, a reasonable person could interpret the Policy to exclude from coverage the damage caused by earth movement, but include the cost of repairing the water line that caused the loss, as it is a plumbing system that caused water damage due to its deterioration from wear and tear. As such, there is an ambiguity. In following the principle that ambiguities in insurance contracts favor the insured and are strictly construed against the insurer, we hold that the cost of repairing the water line was covered by the Policy and reverse the trial court’s order to the extent that it held to the contrary. Such an interpretation is also in accord with the principle that an all-risk policy will cover a loss falling within its coverage unless that loss is specifically excluded, as the Policy did not specifically exclude the cost of repairing a plumbing system from its coverage. Rather, it only specifically excluded damage caused by earth movement.
 

 We, therefore, reverse and remand with directions to enter judgment in favor of Liebel for the cost of tearing out and replacing any part of the house necessary to repair the water line.
 

 Reversed, and Remanded with Directions.
 

 TAYLOR, J., and BEACH, MARCIA, Associate Judge, concur.