DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA
FOURTH DISTRICT

**ENRIQUE ARGUELLO** and **YAHOSKA ARGUELLO,**
Appellants,

v.

**PEOPLE'S TRUST INSURANCE COMPANY,**
Appellee.

No. 4D20-69

[March 31, 2021]

Appeal from the Circuit Court for the Seventeenth Judicial Circuit, Broward County; Jeffrey R. Levenson, Judge; L.T. Case No. CACE-19-003812 (09).

Steven E. Gurian of Marin, Eljaiek, Lopez, & Martinez, P.L., Coconut Grove, for appellants.

David C. Borucke of Cole, Scott & Kissane, P.A., Tampa, for appellee.

WARNER, J.

Appellants Enrique and Yahoska Arguello ("insureds") appeal a final summary judgment in favor of their insurance company for material breach of the insurance contract, which voided any coverage obligations the insurance company owed them in connection with a property loss. The trial court concluded that insureds had forfeited their policy coverage for failure to provide a sworn proof of loss. Because insureds complied to some extent with the policy requirements, and the policy language required the insurance company to prove it was prejudiced by insureds' failure to provide a sworn proof of loss, material issues of fact remain. We therefore reverse.

Insureds' home was insured with appellee/People's Trust Insurance Company ("insurer"). They suffered a plumbing loss at their home in May 2018 due to a leak in their dishwasher, but they did not submit a claim for damages to insurer until November 19, 2018. On November 25, 2018, insurer sent insureds an email with a letter attached that stated insurer was reserving its rights because insureds "did not give prompt notice to us or your agent regarding your loss."

The letter referred to Section I Conditions of the policy which set forth the duties of the homeowner after a loss. In Section I Condition C—"Duties After Loss"—the policy states that "[i]n case of a loss to covered property, we have no duty to provide coverage under this policy if the failure to comply with the following duties is prejudicial to us." Included in the duties listed in this section, paragraph 9 states: "[s]end to us, within sixty (60) days after our request, your signed, sworn proof of loss which sets forth, to the best of your knowledge and belief . . . ." In its letter, insurer stated that it "must conduct further investigation into this matter and provide the insured with a timely response."

A day later, two emails were sent to insurer notifying it that "All Claims Solutions," a public adjuster, would be representing insureds. Insurer sent All Claims Solutions a "Request for Information Letter along with the Sworn Statement in Proof of Loss." The following day, insurer sent insureds' policy to All Claims Solutions. Insurer inspected the property on November 29, 2018. On December 12, 2018, insurer followed up on the inspection with a letter accepting coverage and invoking the option to repair under the contract. The letter broadly set forth what would be covered and repaired and advised insureds of the policy provisions if they disputed the assessment of items insurer was obligated to repair. The letter also notified them that if they disagreed with the estimate and scope of repairs, insureds would have to provide insurer, within sixty days, a sworn proof of loss including what insureds believe to be the proper scope of repairs.

Two weeks later, the insurance adjuster sent insureds a follow-up letter to their November 25th letter again notifying insureds of the requirement of a sworn proof of loss. The adjuster informed them that their response was vital to expedite completion of their investigation and notified them that their failure to provide the statement was a material breach of the policy. To cure the breach, insurer required the receipt of a proof of loss on or before January 25, 2019.

Another email attached a forty-five-day follow-up letter and was sent on January 10, 2019, notifying insureds that they had until Thursday January 24, 2019 to supply the proof of loss in order to avoid materially breaching the insurance contract. When nothing was received, insurer sent another email with a letter attached that was titled "Notice of Material Breach With Option to Cure." It required the sworn proof of loss to be submitted within ten days, with the warning that insurer may rescind coverage for the loss if they failed to comply.

2

On February 14, 2019, insurer sent insureds another email; this time insurer attached a "Material Breach Notice." This letter stated that insureds "remain in material breach," and insurer "has no choice but to seek legal intervention."

Making good on its threat, on February 19, 2019, insurer filed a complaint for declaratory judgment and for material breach of the policy and election to repair contract. Insurer alleged that insureds had an obligation to comply with the policy provisions, including the election to repair to be performed by insurer's selected contractor and to substantially comply with insurer's request for a sworn proof of loss and supporting documentation. In the declaratory judgment action, insurer sought a declaration of rights and obligations under the contract, specifically that the court declare that the failure to provide a sworn proof of loss and supporting documentation barred insureds from any recovery on the claim. In the breach of contract claim, insurer alleged that pecuniary damages were unavailable and sought equitable relief entitling it to a "voidance of further coverage obligations arising from the subject loss."

After insurer filed suit, on March 11, 2019, insureds executed and submitted the sworn proof of loss. Insureds stated in the form that the loss was from "water damage," and that on May 1, 2018, the "dishwasher leaked caused damage to kitchen cabinets only." As to the "whole loss and damage" and as to the amount claimed, insureds wrote "pre-loss condition." Also on March 14, 2019, insureds submitted a signed work authorization "to put the Insured back to their pre-loss condition in accordance with the invocation of the repair option[.]"

Insureds moved to compel an appraisal pursuant to the policy, disputing the amount of the repairs. Before that motion was heard, insurer filed a motion for final summary judgment, arguing that because insureds had failed to comply with the policy loss provisions within sixty days, they had breached the policy and insurer was entitled to a judgment forfeiting coverage. An affidavit of insurer's business records custodian attached all the correspondence between insureds and the company.

The trial court granted summary judgment, concluding that there was a total failure to comply with the sworn proof of loss. The final judgment itself simply stated that "Final Judgment is entered in favor of Plaintiff." From this, insureds appeal.

Preliminarily, we note that insureds never filed an answer and never contested whether the complaint as filed stated a cause of action. In *People's Trust Insurance Co. v. Valentin*, 305 So. 3d 324 (Fla. 3d DCA

2020), this same insurer filed suit for declaratory relief and breach of contract under nearly identical circumstances as the present case. The trial court dismissed those causes for failure to state a cause of action. *Id.* at 326. The Third District held that the breach of contract claim filed by this insurer against another policy holder failed to state a cause of action, because it failed to allege any damages, similar to the complaint in this case. *Id.* at 327. The court reversed the dismissal of the declaratory relief count because the insurer "seeks a declaration of its coverage obligations and whether it is entitled to void the subject policy," which the court concluded was a proper subject for declaratory relief. *Id.*; *see also People's Trust Ins. Co. v. Alonzo-Pombo*, 45 Fla. L. Weekly D2110 (Fla. 3d DCA Sept. 9, 2020). While the parties do not raise the failure to state a cause of action as an issue on appeal, we point this out so that our opinion may not be taken as a tacit acceptance of the claims brought in this case as valid causes of action.

Furthermore, the judgment in this case makes no declaration of the rights or obligations of the parties, as is generally required in a declaratory judgment. *See Sears, Roebuck & Co. v. Forbes/Cohen Fla. Props., L.P.*, 223 So. 3d 292, 298 (Fla. 4th DCA 2017). However, this issue was also not raised on appeal. We have the transcript of proceedings in which the trial court ruled that the evidence showed no compliance with the sworn proof of loss. It granted summary judgment, by which we interpret this to mean no coverage for the loss. With that understanding, we proceed with our analysis.

## Analysis

"The standard of review of a trial court's ruling on a motion for summary judgment based upon the interpretation of an insurance policy is de novo." *Rodrigo v. State Farm Fla. Ins. Co.*, 144 So. 3d 690, 692 (Fla. 4th DCA 2014) (citing *Chandler v. Geico Indem. Co.*, 78 So. 3d 1293, 1296 (Fla. 2011)). "Summary judgment is proper if there is no genuine issue of material fact and if the moving party is entitled to a judgment as a matter of law." *Volusia County v. Aberdeen at Ormond Beach, L.P.*, 760 So. 2d 126, 130 (Fla. 2000).

Insureds contend that the court erred in granting summary judgment on insurer's claims, because: (1) the policy language did not require the submission of a proof of loss in the circumstance where insurer elected to repair the property; and (2) material issues of fact remain as to insureds' compliance with the conditions and whether insurer was prejudiced by any lack of compliance. We conclude that the policy conditions require a

sworn proof of loss statement. However, we also conclude that material issues of fact remain as to compliance and prejudice.

## I. Policy Construction

Insurance contracts are construed in accordance with the plain language of the policy. *Auto-Owners Ins. Co. v. Anderson*, 756 So. 2d 29, 34 (Fla. 2000). However, ambiguous provisions are liberally construed in favor of the insured and strictly against the insurer. *Id.* Nevertheless, "'the rule of liberal construction in favor of the insured applies only when a genuine inconsistency, uncertainty, or ambiguity in meaning remains after resort to the ordinary rules of construction[.]'" *Liebel v. Nationwide Ins. Co. of Fla.*, 22 So. 3d 111, 115 (Fla. 4th DCA 2009) (quoting *State Farm Mut. Auto. Ins. Co. v. Fischer*, 16 So. 3d 1028, 1032 (Fla. 2d DCA 2009)).

The insurance policy in question provides several "Conditions" for insurance coverage. Section I-CONDITIONS provides for Duties after Loss and lists nine conditions, including those at issue in this case:

C. **Duties After Loss**

In case of a loss to covered property, we have no duty to provide coverage under this policy if the failure to comply with the following duties is prejudicial to us. These duties must be performed either by you, an "insured" seeking coverage, or a representative of either:

1. Give prompt notice to us or our agent;
   . . . .
5. Protect the property from further damage. If repairs to the property are required, you must:
   a. Make reasonable and necessary repairs to protect the property; and
   b. Keep an accurate record of repair expenses.
6. Cooperate with us in the investigation of a claim;
7. Prepare an inventory of damaged personal property showing the quantity, description, actual cash value and amount of loss. Attach all bills, receipts and related documents that justify the figures in the inventory;
8. As often as we reasonably require:
   a. Show the damaged property;
   b. Provide us with records and documents we request and permit us to make copies; and

    c. Submit to examination under oath, while not in the presence of another "insured", and sign the same;

9. Send to us, within sixty (60) days after our request, your signed, sworn proof of loss which sets forth, to the best of your knowledge and belief:

    a. The time and cause of loss;

    b. The interests of all "insureds" and all others in the property involved and all liens on the property;

    c. Other insurance which may cover the loss;

    d. Changes in title or occupancy of the property during the term of the policy;

    e. Specifications of damaged buildings and detailed repair estimates;

    f. The inventory of damaged personal property described in C.7. above;

    g. Receipts for additional living expenses incurred and records that support the fair rental value loss; and

    h. Evidence or affidavit that supports a claim under 6. Credit Card, Electronic Fund Transfer Card Or Access Device, Forgery And Counterfeit Money under Section I – Additional Coverages, stating the amount and cause of loss.

This section of the policy also contains Section I – CONDITIONS J. "Our Option," giving insurer the option to repair damaged property itself. Those provisions state:

At our option:

1. For losses settled on an actual cash value basis, we may repair or replace any part of the damaged property with material or property of like kind and quality.

2. For losses covered under Coverage A — Dwelling, insured for Replacement Cost Loss Settlement as outlined in SECTION I — CONDITIONS, Loss Settlement, we may repair the damaged property with material of like kind and quality without deduction for depreciation.

3. We will provide written notice to you no later than thirty (30) days after our inspection of the reported loss.

4. *You must comply with the duties described in SECTION **I** — CONDITIONS, **C. 7 and 8**.*

5. You must provide access to the property and execute any necessary municipal, county or other governmental documentation or permits for repairs to be undertaken.

6. You must execute all work authorizations to allow contractors and related parties entry to the property.

7. You must otherwise cooperate with repairs to the property.

8. You are responsible for payment of the deductible stated in your declaration page.

9. *Our right to repair or replace, and our decision to do so, is a material part of this contract and under no circumstances relieves you or us of our mutual duties and obligations under this contract.*

(Emphasis added.)

In addition, the insurance policy included a Preferred Contractor endorsement which allowed insurer to use Rapid Response, Inc., to make repairs to the property when insurer elects to repair. That endorsement contains a modification to Section I-Conditions C-Duties after Loss, which extensively modifies paragraph C(5), adding duties for the insureds when the insurer uses Rapid Response and limiting insureds recovery if they fail to fulfill them.

Insureds argue that SECTION I-CONDITIONS J.4 eliminates the other duties in SECTION I – CONDITIONS C – Duties after Loss, except those duties set forth in paragraphs C.7 and 8. Alternatively, insureds claim the provisions are ambiguous and should be construed liberally in their favor. This would eliminate the requirement of a sworn proof of loss, contained in paragraph C.9. Insurer points out that Section J. Our Option, paragraph J.9, plainly states that insureds are not relieved of their duties and obligations under the contract. Furthermore, other duties, specifically those under C.5, are referred to and modified in the Preferred Contractor endorsement, which would have no purpose if SECTION I-CONDITIONS J eliminated that provision. Thus, insurer argues, the above-noted provisions do not eliminate the duty of the insured to provide a sworn proof of loss where insurer opts to repair.

We agree with insurer. Although SECTION I-CONDITIONS J.4 requiring compliance with SECTION I-CONDITIONS, C. 7 and 8, appears

superfluous, paragraph J.4 does not conflict with any other provisions. J.9 states that the insured is not relieved of any of its obligations under the contract, which would necessarily include paragraphs C.7 and 8. Thus, J.4 is consistent with J.9, and the policy is not rendered ambiguous. Moreover, the Preferred Contractor endorsement, which is activated when insurer opts to repair, contains a specific change to C.5, which would not be necessary if only C.7 and 8 were applicable under the option to repair obligation set out in SECTION I-CONDITIONS J.

To adopt the insureds' construction of the policy would require us to add words to the policy language that "*only*" CONDITIONS C.7 and 8 of the Duties after Loss apply when the insurer exercises its option to repair. Courts are not free to rewrite the terms of an insurance policy. *See Flaxman v. Gov't Emps. Ins. Co.*, 993 So. 2d 597, 599 (Fla. 4th DCA 2008). Furthermore, the insureds' construction of the option to repair would conflict with J.9 which requires compliance with all duties and obligations under the policy. Such a result would violate general rules of contract construction. "Wherever possible, the provisions of the contract must be read so that they do not conflict even though at first glance they may appear conflicting." *Sch. Bd. of Broward Cty. v. Pierce Goodwin Alexander & Linville*, 137 So. 3d 1059, 1066 (Fla. 4th DCA 2014) (citing *Meyer v. Caribbean Interiors, Inc.,* 435 So. 2d 936, 938 (Fla. 3d DCA 1983)). Putting all provisions together, we conclude that the sworn proof of loss required in C.9 applies even when the insurer exercises its option to repair.

## II. Material Issues of Fact

"[W]hile the interpretation of the terms of an insurance contract normally presents an issue of law, the question of whether certain actions constitute compliance with the contract often presents an issue of fact." *Am. Integrity Ins. Co. v. Estrada*, 276 So. 3d 905, 914 (Fla. 3d DCA 2019). Insureds contend that they did comply with the policy provisions by providing a sworn proof of loss after insurer filed the complaint. Moreover, insureds claim that even if the proof of loss did not comply with the provisions, insurer did not show it was prejudiced. Therefore, they contend that the court erred in granting summary judgment where material facts are disputed.

The policy required the proof of loss to be filled out to the "best of [insureds] knowledge and belief." On the sworn proof of loss, insureds wrote "Pre-Loss Condition" where the document asked for "whole loss damage" and again wrote "Pre-Loss Condition" where it asked for "the amount claimed." The use of "Pre-Loss Condition" mimics insurer's letter of December 12, 2018 that stated, "you should know that [insurer] hereby

elects to use its preferred contractor . . . to repair your property to its pre-loss condition[.]"

In *Solano v. State Farm Florida Insurance Co.*, 155 So. 3d 367 (Fla. 4th DCA 2014), we held that "'[a] total failure to comply' with a condition precedent can preclude the insured from recovering." *Id.* at 370 (quoting *Haiman v. Fed. Ins. Co.*, 798 So. 2d 811, 812 (Fla. 4th DCA 2001)). However, "where an insured cooperates to some extent, a fact question remains as to whether the condition is breached to the extent of denying the insured any recovery under the policy." *Id.*

In another case involving this same insurer, an insured submitted a sworn proof of loss stating that the "Whole Loss Damage" was "pending" and the "Amount Claimed" was "pending." *Gonzalez v. People's Trust Ins. Co.*, 307 So. 3d 956, 957 (Fla. 3d DCA 2020). Relying on *Solano*, the Third District concluded "whether the Gonzalezes substantially complied with their post-loss obligations once People's Trust acknowledged coverage, or whether they totally failed to comply, is a disputed issue of fact and therefore summary judgment was improvidently granted." *Id.* at 959. Similarly, in this case, a disputed issue of material fact remains.

While insureds also did not comply with the provision that the sworn proof of loss be submitted within sixty days of request, we have held that whether an insurer is prejudiced by an insured's untimely compliance is also a question of fact. *See Kramer v. State Farm Fla. Ins. Co.*, 95 So. 3d 303, 306 (Fla. 4th DCA 2012).

We similarly conclude in this case that disputed issues of fact remain as to prejudice to insurer. The policy provisions state that "we [insurer] have no duty to provide coverage under this policy *if the failure to comply with the following duties is prejudicial to us.*" (Emphasis supplied). Thus, failure to comply with policy conditions requires prejudice to insurer in order for that failure to constitute a material breach and permit an insurer to deny coverage for a claim. Whether insurer is prejudiced is a question of fact.

As insurer offered no proof of prejudice in supporting its motion for summary judgment, insurer resorts to a claim that it is entitled to the presumption of prejudice. Insurer cites *Estrada* and other similar cases, all of which stand for the proposition that a presumption of prejudice is afforded an insurer who raises the failure to comply with an insurance policy's post-loss obligations as an affirmative defense to an action against it by an insured. *See, e.g., Estrada*, 276 So. 3d at 916.

9

The policy in *Estrada* provided that no action could be brought against insurer by the insured unless there was full compliance with the post-loss provisions. *See id.* at 908 n.5. Similarly, in this case the policy provides that "[no] action can be brought unless the policy provisions have been complied with." That provision creates a condition precedent to a suit by the insured against insurer. However, it does not create any condition where insurer files an action against the insured. Although we have not as yet adopted the presumption of prejudice in *Estrada*, we need not decide that issue, because it simply does not apply in this case.

Thus, to succeed in its complaint, insurer must prove that insureds' failure to provide a sworn proof of loss prejudiced insurer. Disputed issues of fact remain on multiple issues.

Florida law disfavors forfeiture of insurance coverage "especially when the event that gives rise to the insurer's liability has occurred." *Boca Raton Cmty. Hosp., Inc. v. Brucker*, 695 So. 2d 911, 912 (Fla. 4th DCA 1997). This is what insurer has attempted to do in a precipitous manner by filing suit shortly after the sixty-day window for submitting the proof of loss closed. To justify such a drastic result, insurer, as plaintiff, must prove it has been prejudiced by the failure to expeditiously comply with the post-loss obligations.

We therefore reverse the trial court's summary judgment and remand for further proceedings.

*Reversed and remanded.*

FORST, J., concurs.
CONNER, J., concurs specially with opinion.

CONNER, J., concurring specially.

I concur with the majority's reasoning for reversal, but write to note that the majority opinion leaves for another day an issue not addressed in the briefs, even though the issue is seemingly central to appropriately resolving the motion for summary judgment under review. Although the parties make arguments regarding prejudice surrounding noncompliance or partial compliance with the policy requirement of the requested sworn proof of loss, neither party discusses the propriety of a summary judgment granting the determination of a complete forfeiture of coverage for the loss as requested by the insurer's motion for summary judgment. The "complete forfeiture" issue appears central for two reasons: (1) the insurer conducted its investigation and exercised its option to repair, sending

10

notice to the insureds with a summary of work to be performed to restore the loss, which the insurer valued at approximately $12,000; and (2) the policy contains the following provision: "If 'you' and 'we' fail to agree on the amount of loss, *which includes the scope of repairs*, either may demand *an appraisal as to the amount of loss and the scope of repairs. . . .*" (emphases added).

We have previously opined that proof of loss provisions are considered conditions precedent, for which prejudice to the insurer will be presumed, but the presumption may be rebutted by a showing that the insurer has not been prejudiced. *See Kramer v. State Farm Fla. Ins. Co.*, 95 So. 3d 303, 306 (Fla. 4th DCA 2012). As to the repairs the insurer proposed to make pursuant to the policy, it is difficult to perceive prejudice to the insurer *as to those proposed repairs.* Moreover, the policy provides for an appraisal process if the parties cannot agree on the scope of repairs. Concededly, the policy requires the insureds to authorize repairs in writing before the insurer is obligated to perform on its option to repair, but until the insureds refuse to sign the written authorizations for repairs, it does not appear a complete forfeiture of coverage would be appropriate.

*        *        *

***Not final until disposition of timely filed motion for rehearing.***

11